SMITH v. IMPROVEMENT DISTRICT No. 14 OF TEXARKANA.

Opinion delivered April 28, 1913.

1. MUNICIPAL CORPORATIONS — IMPROVEMENT DISTRICT — BOUNDARIES— JURISDICTION OF CITY COUNCIL.—A city council has jurisdiction to lay off a street improvement district only as designated by the property owners in the first petition, and the council must conform strictly to the authority conferred upon it.   (Page 144.)

2. IMPROVEMENT DISTRICT—BOUNDARIES—RIGHT OF CHANCERY COURT TC ALTER.—The chancery court has no power to change or alter the boundaries of a street improvement district, from those described in the first petition.   (Page 144.)

3. LEASE—LESSEE NOT OWNER IN FORMATION OF IMPROVEMENT DISTRICT.— Where F holds a lease for ninety-nine years on certain property included within a street improvement district, he holds only a chattel interest in the same, and is not the owner of the property within the meaning of art. 19, § 27, of the Constitution of 1874, which provides that the General Assembly may authorize assessments on real property for local improvement in cities, based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected.   (Page 146.)

4. DEFINITIONS—OWNER.—The word "owner" as used in art. 19, § 27, of the Constitution in regard to local improvement means the absolute owner or the owner of the fee.   (Page 146.)

Appeal from Miller Chancery Court; *James D. Shaver,* Chancellor; reversed.

*James D. Head,* for appellant.

1. The petition was not signed by a majority in value of the *owners* of real property in the district.

2. The council erred in including lot 1 and lots 11 and 12, block 73. These lots received no benefit and Frost's signature was obtained by fraud.   98 Ark. 543; 98 *Id.* 113; 94 *Id.* 563; 68 *Id.* 381; 89 *Id.* 561; 81 *Id.* 562; 83 *Id.* 54; 86 *Id.* 1; Welty on Assessments, § 292; 81 Ark. 219; 80 *Id.* 467; Hamilton on Assessments, § § 340, 443; 117 Fed. 925; 28 Cyc. 1130.

3. The assessment was illegal.   86 Ark. 1; Welty on Assessments, 311.

4. The word "owner" means the owner in fee.   148 S. W. 1042; 98 Ark. 553; 75 *Id.* 19; 58 Pac. 509; 93 N. W. 231; 20 Atl. 1028; 28 N. W. 555; 83 *Id.* 85; 21 Ore. 339;

181 Mo. 463; 30 N. Y. Supp. 1040; 15 L. R. A. 262; 64
N. E. 1056; 24 Pac. 1076; 86 N. W. 1093; 1 Abb. Mun.
Corp., § 360; 8 Gill (Md.), 150; 11 Md. 186; 20 Atl. 1028;
38 Fed. 69-73.

*Simms & Cella,* for appellee.

1.   The action of the council is conclusive except for
fraud or mistake.   98 Ark. 543.

2.   The assessment is not illegal.   41 N. E. 877;
Welty on Assessments, 311; 11 Mo. App. 116; 57 Barb.
411; 63 Tex. 533; 141 Mich. 467; 104 N. W. 730.

3.   The assessment does not exceed 20 per cent, but
if it did, only the excess is void.   95 Ark. 575; 86 *Id.*
20; 97 *Id.* 334; 133 S. W. 1126.

4.   The Huckins property was properly signed for.
Washb. Real Prop. (6 ed.), 1454; *Ib.* 1681; Perry on
Trusts (3 ed.), 400; 69 Ark. 68; 40 Cyc. 1474.

5.   Frost was the "owner" of lots 11 and 12.   64
N. E. 1056; 220 U. S. 472; 20 Atl. 1028; 45 L. R. A. 662;
64 Ark. 136; 67 Cal. 110; 51 Conn. 259.

Hart, J.   Improvement District No. 14 of the city
of Texarkana, Arkansas, was organized for the purpose
of grading and paving with creosote blocks or asphalt
some fifteen blocks of streets composed for the most part
of State Line Avenue and Front Street. C. A. Smith and
R. H. T. Mann, who are owners of real estate within the
proposed district, instituted this action in the chancery
court against the members of the board of improvement
district to enjoin the collection of assessments against
their lands and to vacate and annul the improvement dis-
trict.   Among other grounds, they allege that the second
petition provided by the statute asking that the improve-
ment be made was not signed by a majority in value of
the owners of real property within the district.   The
chancellor found in favor of the defendants and the
complaint was dismissed for want of equity.   The plain-
tiffs have appealed.

The facts are undisputed, and so far as are neces-
sary for a determination of the issues involved are as
follows:   The total assessed valuation of all the prop-

erty in the district for the year 1911, that being the last assessment on file at the time of the organization of said district, was $357,000. Signatures to the petition to property amounting to $205,200, as shown by the county assessment, were obtained. But plaintiffs contend that the signers to some of this property were not the owners within the meaning of the Constitution and that when their names are taken off the petition it will be found that a majority in value of owners of property within the district have not signed the petition. The State National Bank building, a brick and steel structure, is situated on lots 11, 12, 13 and 14. E. W. Frost signed the petition for this property. He was the owner in fee simple of lots 13 and 14 and had a lease on lots 11 and 12 for the period of ninety-nine years, commencing July 1, 1904. By the terms of the lease he was to pay all taxes and assessments against the property and had the right to make any changes or substitution of improvements on it. At the end of the term the real estate together with improvements upon the same were to revert to the owners of the lots. These four lots with the improvements on them were assessed at $80,000 for the year 1911. It was agreed that the assessed valuation of lots 11 and 12 for 1911 was $40,000. It will be noticed that the assessed value of all the property in the district not including lots 11 and 12 is $357,000, and that the assessed valuation of all the property signed for asking that the improvement be made amounts to $205,200. If it should be determined that lots 11 and 12 should be included in fixing the assessed value of all the property in the district and should not be included in the list of property signed for asking that the improvement be made, it is manifest that a majority in value of the owners of real property within the district have not signed the petition asking that the improvement be made and the improvement district, under the former decisions of this court, is void.

It is admitted that lots 11 and 12 are situated within the boundaries of the district. About ten years before

the present district was organized the street in front of these lots was paved with brick and the proof shows that the pavement is now in a good state of preservation. For this reason it is claimed that lots 11 and 12 are not benefited and should not be included in making up the valuation of all the property in the district. In the case of *Kraft* v. *Smothers,* 146 S. W. (Ark.), 505, 103 Ark., the court said:

"Our Legislature has prescribed the manner in which improvement districts may be organized; and, pursuant to the power delegated to it, the city council passed the ordinance in question, for the purpose of creating the sewer district. The foundation of the improvement was the petition of the owners of real property situated in the proposed district. Under the statute, the extent and character of the improvements, as expressed in the ordinance, must substantially comply with the terms of the petition upon which it is based."

It will be seen our statutes require as a prerequisite to the exercise of authority conferred upon the city council that a petition be first filed designating the boundaries of the district so that it may be easily distinguished. This is for the benefit of the property owners. A property owner might be willing to sign for an improvement district as designated in the first petition and might be unwilling to sign if a part of the property included within the boundaries of the district should be omitted; for this might have the effect of imposing upon the property owners additional and enlarged burdens which they did not contemplate when they signed the petition. A special limited jurisdiction is conferred upon the city council to lay off the district as designated by the property owners in the first petition and the council must conform strictly to the authority conferred upon it. For the same reason the chancery court had no power to change or alter the boundaries of the district, and it follows that in making up the valuation of the property of the district all the property situated in the district as it was created must be considered.

It is insisted that the lessees are not owners within the meaning of section 27, article 19, of our Constitution, and in this respect we think counsel are correct. Section 27, article 19, of the Constitution reads as follows:

"Nothing in this Constitution shall be so construed as to prohibit the General Assembly from authorizing assessments on real property for local improvements in towns and cities under such regulations as may be prescribed by law, to be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected; but such assessments shall be *ad valorem* and uniform."

In *Lenow* v. *Fones*, 48 Ark. 557, it was held that a lease of whatever duration is but a chattel interest and, therefore, upon the death of the lessee's intestate his widow will take dower in it absolutely as in personal property and not for life as in real estate. In this case the court quoted with approval the following: "No proposition has been better settled from the earliest days of the common law than that a lease of whatever duration is but a chattel. Hence the lessee could not be an owner of real property within the district in contemplation of the action of the Constitution above quoted. This holding is in accord with the rule laid down in *Ahern* v. *Board of Improvement District No. 3, Texarkana,* 69 Ark. 86, where the court held that a tenant for life is not an owner who may sign a petition for the formation of an improvement district. In the case of *Rector* v. *Board of Improvement,* 50 Ark. 116, the court said:

"The statute authorizing administrators to sign for estates can not, so far as the heirs are concerned, give their signatures any efficacy in the face of the Constitution requiring the consent of the owners."

Counsel for the defendants rely upon the case of *Village of St. Bernard* v. *Kempner,* 45 L. R. A. 662, where the Supreme Court of Ohio held that the holder of a ninety-nine-year lease, renewable forever, was the owner of the property within the meaning of an improvement

law requiring the signatures of owners. The theory upon which cases like this proceed is that a lease for a long term and renewable forever is a lease in perpetuity and creates in the lessee a qualified base or determinable fee, because it is said they have a possibility of enduring forever. 37 Cyc. 791; *Conn. Spiritualist Camp-Meeting Association* v. *Town of East Lyme* (Conn.), 5 Atl. 849. See also 4 Kent Com. (5 ed.), page 9. The lease in the present case was for a term of ninety-nine years merely and does not even come within the rule laid down in those cases. The general rule regarding lands held under a lease for years giving the right to hold the land for usufructory purposes only, is, in the absence of a statute to the contrary, that there is to be but one assessment of the entire estate in the land and that this assessment should include the value of both the estate for years and the land or reversion. 27 A. & E. Enc. of Law, page 678. The owner of the fee may fairly be deemed to be the owner of the whole estate for the purpose of taxation and this, so far as we are advised, has been the uniform practice in this State. There is a good reason for the rule. The owner of the land annually receives a sum as rent which he deems the equivalent of the value of the use of the land to him and he, therefore, enjoys the entire beneficial interest in the premises, including the value of the leasehold as well as the fee. Besides, as we have already seen, the trend of our decisions is to hold that the word "owner" as used in the section of the Constitution in regard to local improvement means the absolute owner or the owner of the fee.

It follows that the decree must be reversed and the cause remanded with directions to the chancellor to grant the relief prayed for in plaintiffs' complaint.