HOLT *v.* RING.

Opinion delivered June 25, 1928.

*Sam M. Wassell*, for appellant.

*Wallace Townsend*, for appellee.

MEHAFFY, J. Suit was brought in the Pulaski Chancery Court by appellants, owners of real estate within the boundaries of Street Improvement District No. 465 of Little Rock. The suit is an attack on the proceedings in the city council and also an attack on the validity of the district.

The complaint, as abstracted, shows that appellants contend that there was no proper and legal certification, as provided by law, covering the value of real estate within the district. (2) That there is no legal certification from the county clerk's office that a majority in value signed said petition. (3) That the city council and the street improvement district committee, to which the city referred the matter, refused to consider any protests that property was included which should be excluded, and contended that the council would only consider whether the lump amount certified to by the Little Rock Abstract and Guaranty Company of $1,315,490 was more than 50 per cent of $2,161,465, and refused to consider any other fact. (4) That there has been no examination of protests whatever. That the inclusion of certain property in the petition is arbitrary, and should be excluded, and that the committee of the city council, and the city council itself, refused to hear proof on said contention; that for the purpose of ascertaining the value of the property signed for in the district, certain property

should be excluded. (5) That said petition does not contain a majority in value of legal signers within the district. (6) That certain property values within the district have not been considered in determining the total values. (7) That the bounds of said district are improperly stated, and petitioners are unable to determine what property is in the district and what property will be taxed.

The appellees filed answer, denying all the allegations of the complaint.

Appellant's first contention is that the city council should have heard the proof which was offered to show that certain property included in the district should be excluded, and that certain property excluded should be included, and that the city council was wrong in deciding that it would go into nothing except the question whether the majority favored the district.

It is earnestly insisted that the ordinance should have denied the establishment of the district instead of granting it. The petition of the property owners is not abstracted, but it is not contended that the first petition did not comply with the law. The first petition was presented to the city council on March 7, and on the same day the city council passed the ordinance establishing the district. There were no protests against the property included in the district or the purpose for which the district was created, and it is therefore contended by the appellee that, since the petition was in proper form and properly presented and signed by more than ten property owners, it became the duty of the city council to lay off the portion of the city included in the petition into the improvement district.

Section 5649 of Crawford & Moses' Digest provides that, when any ten owners of real property shall petition the city or town council to take steps toward making any such local improvements, it shall be the duty of the council to at once lay off the portion of the city or town into an improvement district, designating the boundaries of

such district so that it may be easily distinguished. And it provides that the district shall be designated by number.

It therefore appears from the above section that the Legislature has prescribed the manner in which the improvement district may be organized, and has made it the duty of the city council to at once lay off the district. The foundation of the improvement is the petition of the owners of real property situated in the proposed district. There must be ten owners of real property. It is the duty of the city council to pass an ordinance in substantial compliance with the terms of the petition upon which it is based.

This court has said: "Special limited jurisdiction is conferred upon the city council to lay off the district as designated by the property owners in the first petition. And the council must conform strictly to the authority conferred upon it." *Smith* v. *Improvement District No. 14,* 108 Ark. 141, 156 S. W. 455, 44 L. R. A. (N. S.) 696.

Appellant quotes from and relies on the case of *Lipscomb* v. *Lenon,* 169 Ark. 610, 276 S. W. 367. That case construes an act which was passed by the Legislature of 1923, authorizing the formation of improvement districts for the building of auditoriums for public meetings. And the court there held that the building of an auditorium would be for the benefit of the whole community who may be served by it individually and collectively, and that it cannot and does not confer any peculiar or special benefit upon the real estate assessed and taxed for its construction and maintenance. The court also held that, if it could be said that such an improvement is essential to the progress and prosperity of the city and suburban communities, the contribution which an auditorium makes to such prosperity is general to the entire community, and not peculiar and special to the real property in the city and outlying contiguous territory. In that case the court said:

"But, unless the land embraced in a local improvement district is peculiarly and especially benefited by the

improvement contemplated, there is no justification, under our Constitution and laws, for the creation of such districts, whether the lands constituting the district be entirely rural or urban territory, or both. No better definition has ever been given of a local improvement than that by Judge RIDDICK, speaking for the court, in *Crane* v. *Siloam Springs,* 67 Ark. 30, at page 37, 55 S. W. 956, where he said: 'If we look for the technical or legal meaning of the phrase "local improvement," we find it to be a public improvement, which, although it may incidentally benefit the public at large, is made primarily for the accommodation and convenience of the inhabitants of a particular locality, and which is of such a nature as to confer a special benefit upon the real property adjoining or near the locality of the improvement.' "

The improvement must be public, and at the same time the property taxed must be peculiarly and especially benefited. Unless there is peculiar and special benefit to the property embraced within the district, it cannot be taxed. The whole theory of taxing real estate for making improvements is that the property taxed is benefited especially, and the benefits must equal or exceed the tax. No tax can be collected on property in an improvement district for the purpose of making the improvements unless the property taxed is benefited at least as much as the tax.

Appellant does not contend that, after the filing of the first petition and passing of the ordinance, notice was not given, as required by law, advising the property owners within the district that, on a day named, the council would hear the petition and determine whether those signing the same constitute a majority in value of the owners of real property.

The statute provides: "At the meeting named in the notice, the owners of real property within such district shall be heard before the council, which shall determine whether the signers of the said petition constitute a majority in value, and the finding of the council shall be conclusive, unless, within 30 days thereafter, suit be

brought to review its action in the chancery court in the county where such city or town lies. In determining whether those signing the petition constitute a majority in value of the owners of real property within the district, the council and the chancery court shall be guided by the record of deeds in the office of the recorder of the county, and shall not consider any unrecorded instruments.''

It was the duty of the council, in determining whether or not a majority in value had signed the petition, to be guided by the record of deeds in the office of the recorder of the county. It might be, in the formation of an improvement district, that persons own considerable property but their deeds had not been recorded. And, of course, this property, if within the district, would add to the value. And if the owners of the property signed the petition, it would add to the real value of the property owned by the petitioner. But the Legislature has seen proper to provide the method by which the council and the chancery court must determine whether or not a majority in value have signed the petition. This method must be followed both by the city council and the chancery court. And it would not be competent to introduce unrecorded deeds or show the value of property in any other way except that provided by law.

The appellant offered to show in the chancery court that he had offered testimony before the city council; that he had offered to prove certain facts. He offered to prove by several witnesses that they attended the first meeting of the special improvement district committee, and offered to show that certain property was arbitrarily included within the bounds of Street Improvement District No. 465; that said property was in no wise benefited, and should be excluded; and offered to show that the chairman of the street improvement district committee stated that they were to go by the abstracter's certificate alone to see whether a majority had petitioned for the improvement, and, if so, they must recommend to the council that the district be established.

The suggestion that this proof was offered in the city council is not equivalent to offering it in the chancery court. But the city council, as well as the chancery court, was required to be guided by the record of deeds in the office of the recorder of the county in determining whether those signing the petition constituted a majority in value. And the evidence offered was not competent in determining whether or not the petition was signed by a majority.

It may be that appellants are correct, that there should be some method of procedure where the conclusions of the city council should be based on some fact. But the method is provided by law, and neither the city council nor the court can change the law. And the law is that they must be guided by the record of deeds in the office of the recorder of the county.

When the first petition is presented to a city council for an improvement district, the statute says it shall be the duty of the council to at once lay off the district. And the law makes it the duty of the city clerk of the city or town, within 20 days after the designation of such district, to publish the ordinance establishing the district. And thereafter, within the time limited by law, the persons claiming to be a majority in value must present their petition, and, when that is done, the law provides that the city council shall determine whether or not there is a majority, in the manner above mentioned.

It is next contended by appellant that the district is void because it divides lots. Certainly, in the formation of an improvement district, the property owners forming the district can fix the boundaries, and it has been decided by this court that the boundary line may divide lots. If a lot is divided, a portion of it being within the district and another portion without, this does not invalidate the district. But, in determining whether the petitioners have a majority in value, the value of a lot so divided cannot be considered. And the reason it cannot be considered is that the council and the court must be guided, in arriving at the value, by the deeds in

the office of the recorder of the county, and cannot take other and additional evidence to determine the value. It might be better if the law authorized the taking of testimony showing the value of the portion of the lot included within the district. But such is not the law, and this court has held that the value of such lots cannot be considered, and the chancery court did not consider them in this case.

It is also contended that, where improvement or a building is situated on two lots and only one of them is in the district and the other one without the boundaries of the district, this makes the district void. This does not affect the validity of the district. If one lot was benefited and the other was not, it would be entirely proper to include the lot which was benefited, although a building might cover it and the one that was excluded. It would be practically impossible to form an improvement district that did not in some measure benefit a great deal of property outside of the district. But this benefit is the benefit received by the lands generally and not a special and peculiar benefit. To justify an assessment of benefits for any local improvement, it is necessary that the improvement be public and at the same time specially and peculiarly benefit the property taxed.

It is next contended by appellant that certain mortgaged property cannot be included because the mortgagor has parted with the legal title. This court has held that the mortgagor was the owner in the meaning of the law when he had conveyed his property by mortgage, if he was still allowed to redeem. There is no property mentioned in this suit where the owner has mortgaged it and does not have the right to redeem, so this case is settled outright by former decisions of this court. And the same may be said about leased property. However, the complaint made about property that is leased would be unavailing anyway, because both the lessor and lessee signed the petition. See *Ahern* v. *Board of Improvement Dist. No. 3, Texarkana,* 69 Ark. 68, 61 S. W. 575.

As to the property where one lot is included and another not included and the building or improvement is on both lots, it appears that the assessment record carries separate assessments for the separate lots.

The appellant also complains about the manner of proving the value, and insists that the clerk himself would have to make the proof. We do not agree with appellant in this. While the value is fixed according to the deeds in the office of the recorder of the county, it does not necessarily follow that the clerk is the only person who can testify to those. They are public records, and any person who examines them might testify. To be sure, the appellant could introduce the clerk if he wished to do so, if there was any dispute about the correctness of the testimony.

The court did not exclude any testimony or refuse to permit any competent testimony offered to be introduced in the trial in the chancery court. The chancery court, of course, did not determine whether the council heard proper evidence or not, but it did determine from evidence introduced in the court whether the district was valid or not.

Practically all of the questions involved here have been settled by numerous decisions of this court, and it would serve no useful purpose to review them here or comment on them at length. And the finding of the chancellor on questions of fact we think are sustained by a preponderance of evidence, and the decree is affirmed.