## No. 13,863.

BOULDERADO MOTORS, INC. *v.* PETERSON.
(66 P. [2d] 1269)

Decided March 29, 1937. Rehearing denied April 19, 1937.

Messrs. SMITH, BROCK, AKOLT & CAMPBELL, Mr. R. A. DICK, for plaintiff in error.

Messrs. HAWKINS & HAWKINS, Messrs. RINN & CONNELL, Mr. CARL W. BERUEFFY, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

DEFENDANT in error, as plaintiff, filed this action in the district court of Boulder county to recover damages for personal injuries which she alleged she sustained as a result of an automobile collision. A jury trial resulted in a verdict in her favor and against the defendant in the sum of $10,364. To review this judgment, the defendant, plaintiff in error here, prosecutes this writ.

The collision occurred November 7, 1934, at about 7:20 p. m., while the plaintiff was driving an Oldsmobile automobile in an easterly direction on Aurora street where it intersects with Tenth street, in the city of Boulder. The other car involved was a Buick automobile owned by defendant and at the time was being operated by George Livingston, a seventeen year old boy. Livingston was driving the Buick car in a northerly direction on Tenth street. The cars collided at the intersection. With plaintiff in her car was her seven year old daughter and her sisters-in-law Helen and Mildred Peterson. Mildred was injured in the collision and died a few moments thereafter.

Briefly stated, the amended complaint alleges that the collision was caused by the negligence of Livingston, principally by the excessive rate of speed at which he was driving; that the Buick automobile which he was operating was the property of defendant, Boulderado

Motors, Inc.; that at the time of the collision, Livingston was an employee of the defendant and acting within the scope and course of his employment. Defendant moved for a change of venue, which, upon hearing, was denied. In its answer thereafter filed it denied that the negligence of Livingston was the proximate cause of the collision; that Livingston was an employee of defendant, or that he was acting within the course and scope of any employment by the defendant. As a second defense, contributory negligence of plaintiff was alleged.

While fifty separate errors are assigned, they are directed to the refusal of the court to grant defendant's motion for nonsuit and directed verdict; the admission and rejection of evidence; the giving and refusal of certain instructions; the denial of the motion for change of venue; and excessiveness of the verdict. The errors, as they relate to these propositions, are discussed, but the principal question involved is the character of the relationship existing between Livingston and the defendant. Plaintiff alleges it to be that of employer and employee. Defendant, admitting ownership of the car, denied any employment at the time of the collision, and tried the case upon the theory of bailment; but in this court, and for the first time, it asserts the position of Livingston to have been that of an independent contractor.

More than twenty witnesses testified at the trial, and from their evidence briefly summarized, we glean the following facts: The defendant, Boulderado Motors, Inc., operates an automobile garage and sales agency, its business including repair work, the sale of auto supplies, and the handling of used cars. Wilbur Williams was president, and Charles Smith secretary-treasurer and one of two general managers of the company. At the time of the accident there were about six full time employees. Livingston, the driver of defendant's automobile involved in this case, was a brother-in-law of Williams the president, and was a part time employee of the company working Saturdays, Sundays and holidays, and occasion-

ally at nights. He did all sorts of work around its place of business such as washing and greasing cars, selling oil and gas occasionally, cleaning up the garage, acting as a general handy man and, as needed, operated automobiles. On the evening in question, he had obtained from Smith, the secretary and manager, permission to use the Buick automobile involved in the accident, intending, according to arrangement, to take a girl friend to a dinner dance later in the evening. He drove about town stopping at various places, finally taking one Hume, a nineteen year old boy friend, in the car with him and was driving north on Tenth street at the rate of about 35 miles per hour, according to his testimony, when approaching the place of the collision; this speed, however, as disclosed by the evidence, being in excess of the limit fixed by the ordinances of the city of Boulder.

Other testimony, as well as the physical facts, tend to show a greater rate of speed, said by plaintiff to have been about sixty miles an hour. It appears from the evidence that plaintiff was driving about twenty miles an hour and, approaching the intersection, she slowed her car down to about fifteen miles per hour; that upon looking both ways on Tenth street, which she was about to cross, she saw the lights of an approaching car which appeared to be about 200 yards distant, the car making a loud roaring sound; that when she was practically across the intersection, she saw that the car, driven by Livingston, was coming so fast that she could not get out of its way; that she then swerved a little to the left and the collision occurred, first spinning her car around, after which it turned over. She received serious internal and external injuries. Mildred was fatally injured, dying a few moments after the collision.

▆▆ To comment upon the strength or weakness of the testimony adduced before the jury would serve no useful purpose. The answer to one question: that is, whether or not Livingston was in the employ of defendant company at the time of the accident, and if so whether

he was acting within the course and scope of such employment, controls the disposition of this controversy and as to this question—one of fact—the testimony is in conflict. To resolve such conflict was solely the jury's province, and its conclusion is final if the case was submitted to it upon proper instructions which fully protected the legal rights of defendant. The court's charge contained twenty-five separate instructions, exhaustively covering the law governing juries in cases of this nature. Among them, to the giving of which defendant saved no exceptions, are the following:

"No. 16. The fact alone that the defendant, Boulderado Motors, Inc., was the owner of the automobile which George Livingston was driving at the time of the accident does not make Boulderado Motors, Inc., liable for any negligent acts of George Livingston in driving the automobile. Before you can render a verdict against the defendant in this case it is necessary for you to find and believe from the evidence not only that George Livingston was negligent in operating the automobile and that his negligence was the sole proximate cause of the collision, but you must also find and believe from the evidence that at the time of the collision George Livingston was in the employment of Boulderado Motors, Inc., and at that time was acting in the course and scope of his employment. Unless you find from the evidence that each and all of these facts have been established, your verdict must be for the defendant."

"No. 21. If you believe from the evidence that George Livingston borrowed the Buick automobile from the defendant on the evening of the collision for the sole purpose of going to a dance, or for some other private purpose of his own not connected with the business of the defendant, and the defendant lent Livingston the automobile for the purpose of going to a dance or other private purpose, not in any way connected with defendant's business then your verdict should be for the defendant."

It thus appears that any conflict in the evidence on this

question was submitted to the jury upon instructions, not confusing, and favorable to the defendant, in view of which, its finding to the effect that Livingston was an employee of defendant and was acting within the course and scope of his employment at the time of the accident cannot be disturbed.

If the amount of the verdict is so excessive, as argued by defendant, as to reflect passion or prejudice or if it discloses a result other than that of fair consideration, then it should not be allowed to stand as to the amount; however, it can not well be contended that plaintiff did not receive serious and disabling injuries, and there being sufficient evidence to support the verdict as to amount and taking into consideration the fact that the trial court, after seeing the witnesses and hearing their testimony, refused to set aside the verdict as excessive, we would not feel justified in disturbing the judgment, and accordingly it is affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE KNOUS concur.