## No. 14,525.

### General Foods Sales Company, Inc. *v.* Smith.
(97 P. [2d] 429)

Decided December 11, 1939.

Mr. WILLIAM R. KELLY, Mr. IVOR O. WINGREN, for plaintiff in error.

Mr. THOMAS A. NIXON, for defendant in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

ACTION for damages for personal injuries sustained by Smith, plaintiff below, due to the alleged negligent operation of an automobile by one Robertson, one of the defendants below and a sales representative of the other defendant, General Foods Sales Company, Inc. The case was tried to a jury and plaintiff had judgment in the sum of $6,525 against both defendants. The General Foods Sales Company alone seeks reversal on a writ of error, principally on the theory that at the time of the accident Robertson was not acting in any capacity for it, but was using the company's car for his personal pleasure, and hence it was not liable under the doctrine of respondeat superior.

It is conceded that Robertson was a general agent of the company. He was furnished with a Dodge commercial car, i.e., one with two single seats in front and a long covered body in which he carried advertising material for the eighty or more food products sold by the company. On each side of the body were the words, "General Foods Sales Company, Inc.," and the letters "G.F." on the door panels. His territory included northern Colorado and extended from Loveland north to the Wyoming and Nebraska state lines, and eastward from Estes Park to the Nebraska and Kansas state lines. He was on his own time and could cover his territory at his convenience. The commercial truck was used by

him while taking orders and not for making deliveries.

It is unnecessary to relate the details of the accident, otherwise than to state that on Tuesday, October 27, 1936, at about four o'clock in the afternoon, the company's truck, while being driven by Robertson at an allegedly excessive speed collided with a truck owned and being operated by Smith, resulting in the injuries of which the latter complains, namely, severe bruises and contusions in his left knee which rendered his left leg practically useless. We assume Robertson's negligence and liability therefor since he is not here attacking the judgment.

The company's defense is that at the time of the accident Robertson and two companions, Shaw and Gray, were going duck hunting and Robertson, therefore, was on a trip for his own pleasure, and not engaged in any business for or on behalf of the company. The matter is before us principally on the proposition that the trial court erred in refusing to direct a verdict in favor of the company at the close of the evidence.

It is undisputed that Robertson had been instructed by the defendant company not to carry other people in the truck, and that he took the car on this day because his wife was using their family auto. Smith's wife testified that Robertson had importuned her not to say anything about the other men being with him as it might cost him his job, but this, if true, would not render the company exempt from liability, if Robertson was in fact engaged in company business at the time of the accident. There is evidence that he had completed his work about noon on that day and arranged with Shaw and Gray to pick them up a little later, but since the accident occurred on Tuesday, not a holiday, and during the usual working hours, Robertson's statement that he had finished his work in Greeley for the day was not conclusive. His testimony on this point on direct examination, is as follows: "Q. Where were you going? A. Hunting. Q. Where? A. To the McPherson ranch—

the K4 Ranch at Masters. Q. And who were going hunting? A. Mr. Gray and Mr. Shaw and myself. Q. And you had two shotguns? A. Yes, I am positive of that fact. Q. And you think possibly a twenty-two rifle? A. I think so. Q. Did you have some cartridges? A. Yes, we had several boxes of cartridges. Q. What time did you leave Greeley? What time was it when you left town on this hunting trip that afternoon? A. Well, I think it was about three o'clock—I would say approximately three o'clock. Q. Tell the jury why you took the General Foods Company truck for the hunting trip that afternoon. A. Well, I have a car of my own plus the Company car at the time, and at the time we decided to go hunting my wife wanted to use our personal car, possibly for some personal calls here in town, and so it wasn't available for us to take my private car, and Mr. Gray's car was too small to accommodate the three of us plus our hunting paraphernalia, so the natural thing to do was to use the Company car."

The other two men were not so sure as to some of these statements. Mr. Gray's testimony was in part as follows: "Q. Did Mr. Robertson have his gun? A. I just don't remember. I think we had two shotguns and a rifle. I can't recall for sure. * * * Q. How was Mr. Robertson dressed? A. I just couldn't recall how he was dressed." The following appears in Mr. Shaw's testimony: "Q. And there were just two shotguns in the car? A. Yes. Q. And you were going hunting and Mr. Gray was going hunting? A. Yes, and Mr. Robertson I imagine was going hunting, too."

So it would appear that even under the evidence for defendant there was some doubt as to Robertson's intentions in going on this purported hunting trip.

The accident happened about two miles east of Kersey, Colorado, on U. S. Highway No. 34 (formerly No. 6), being the main highway between Greeley — where Robertson had his home and headquarters — and Fort Morgan. On the highway between these two cities are

several smaller towns, among them Hardin and Masters. It is conceded that when Robertson had business in eastern Colorado he traveled this route, and that one George Lamont operated a combination filling station and grocery store at Masters. Counsel for Smith introduced evidence for the purpose of showing that Robertson was not going hunting, but that he simply was furnishing transportation for Gray and Shaw as far as Hardin on his way to Fort Morgan, arguing therefrom that he was on company business at the time of the accident.

The testimony upon which he relies to sustain this contention is as follows: "Q. Mr. Gray, you knew that Mr. Robertson was going on to conduct some business affairs of his own, didn't you, that day? A. Well, I couldn't say he was. He didn't come out and make any plain statement that he was going on business. He said he wanted to stop at Masters to see George Lamont. Q. He wanted to stop at Masters to see George Lamont? A. Yes, sir. Q. George Lamont has a service station and a grocery store at Masters, does he not? A. Yes, I think he has a kind of a store there. He said he wanted to stop and see George a minute. Now, I don't know what the occasion was. Q. And the McPherson ranch is considerably this side of George's place? A. No, you turn right there at George's place, and go north. You go right by George's place to go to McPherson's. Q. You turn right at George's place to go to the McPherson ranch? A. Yes, sir." There is in the record no denial by Robertson that he was going to stop at Masters to see Lamont as Gray stated.

Mrs. Smith testified concerning a conversation with Robertson as follows: "Q. Did you take any part in the conversation? A. Yes, I took part in the conversation myself. Q. All right, what was it? A. Why he was surprised * * * and he says, 'My company will take care of all this.' * * * Q. Did you talk to him any that day, or some other day, and if so state the time and place, concerning where he was going at the time of this

accident? A. Yes, sir. Q. When was that? A. It was that day—it was on that Thursday when he was in the bedroom there talking to Mr. Smith and I and the man that was working there at the house, and he spoke of two places where he was going. He said he was taking two of his friends down by Hardin, somewhere close there, and then he said he was going to take them hunting, and he was going on. Q. Where did he say that he was going on? A. Well, I believe he said to Morgan was one place, but he spoke of two different places. He didn't say anything about him going hunting himself but he said he was taking two of his friends down there with him to go hunting, and he was going on to these two places."

Objection was made to a part of this testimony on the ground that it was a narrative of past events made two days after the accident and no part of the res gestae, and therefore was inadmissible as against the company. The objection was properly overruled. The conversation clearly was admissible as to Robertson as a declaration against interest regardless of the time it occurred. As to the company, the court stated, "The objection is overruled, subject to the matter being connected up, and the usual cautionary instruction given to the jury later." This ruling also was proper. *La Fitte v. Rups,* 13 Colo. 207, 22 Pac. 309. No instruction limiting the testimony in such a manner was requested. The evidence is fortified by Robertson's further admission that after proper arrangements had been made for medical aid to Smith he proceeded to Fort Morgan and Brush, returning to Greeley Friday night. This would seem to indicate that he was on his way to Fort Morgan and Brush when the trip was interrupted by the accident, and brings the conversation within the general rule, "that whatever is said by an agent, during the course of his duties and within the scope of his authority, relative to business contemplated by the agency in which he is then engaged is in legal intendment said by his

principal and is admissible in evidence against such principal." 20 Am. Jur., p. 505, §596.

Another part of the evidence from which it might well be inferred that Robertson was "in continuity of employment" and engaged in the company's business was that in regard to his attire. Smith stated Robertson was dressed in ordinary business clothes. Robertson denied this, but admitted he was wearing house slippers. We believe a reasonable inference would be that he was wearing house slippers for comfort in driving, rather than for a hunting trip. Shaw and Gray did not remember what Robertson was wearing at the time.

■ We are of the opinion that the record discloses sufficient competent evidence from which a reasonable inference could be drawn that at the time of the accident Robertson was engaged in the business of the company—his general agency being admitted—and that the trial court committed no error in submitting the case to the jury under instructions to which there was no objection except as hereinafter noted.

■ Instruction No. 4, setting out statutory traffic regulations, is criticized for the reason "that there is no intersection at the location of the collision," the point being that if there were no intersection at the place where plaintiff was trying to make a left turn there could be no liability. There is no merit to this contention. The evidence clearly supports the jury's finding, and on this proposition the point at the crossroad into which plaintiff was seeking to turn is within our statutory definition of "intersection." '35 C. S. A., c. 16, §76 (bb), S. L. '31, c. 122, §1 (bb), S. L. '35, c. 164, §2.

■ The alleged improper remarks of counsel for plaintiff in his argument to the jury do not constitute reversible error under the situation present in this case. There may have been a trifle too much enthusiasm on both sides. It must be said that counsel for defendants invited some reference to the status and liability of the defendant corporation. Proper admonition was given by

the trial court as to the remarks criticized, and while there were further statements of questionable propriety no further objection was made.

We have not overlooked the recent note in 122 A. L. R. 854, concerning liability of an owner of a car used by a servant for his own convenience. While there may be some conflict in the law announced in the cases therein cited and our views as expressed in the instant case, we are satisfied that our conclusion is clearly within the law of our own cases on the subject, and upon which plaintiff principally relies. *Ward v. Teller Co.*, 60 Colo. 47, 153 Pac. 219, and *American Insurance Co. v. Naylor*, 101 Colo. 34, 70 P. (2d) 349; Id. 103 Colo. 461, 87 P. (2d) 260.

Judgment affirmed.