No. 16,691.

GREENWOOD ET AL. *v.* CECIL KIER.

No. 16,692.

GREENWOOD ET AL. *v.* LOIS KIER.
(243 P. [2d] 317)

Decided March 31, 1952

Messrs. WOLVINGTON & WORMWOOD, for plaintiffs in error.

Mr. LLOYD H. STORMO, Mr. GEORGE F. HARSH, Mr. NORMAN B. SMITH, for defendants in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

CECIL KIER and Lois Kier, husband and wife, brought separate actions against Grace Greenwood and Royal Photo Service, Inc., to recover damages for personal injuries resulting to each of them in a collision of an automobile which Cecil Kier was driving with an automobile owned by defendant Royal Photo Service, Inc., which was being operated by one Charles Greenwood, husband of Grace Greenwood. The actions were consolidated for trial to a jury, resulting in verdicts in favor of Cecil Kier in the sum of $20,000 and in favor of Lois Kier in the sum of $25,-000, upon which verdicts judgments were duly entered. The defendants are here by writ of error, seeking a reversal of the judgments.

According to the record the complaints were filed on *March 14, 1949;* the answers to the amended complaints were filed on *June 10, 1949;* the amended complaints were filed on *June 27, 1950,* and the trial to a jury began on June 26, 1950.

We will herein refer to Royal Photo Service, Inc. as corporation; Charles Greenwood as Charles; Grace Greenwood as Grace; Cecil Kier as Cecil; Lois Kier as Lois; and Harold Wickham, Charles' hunting companion, as Harold.

In Cecil's amended complaint it is alleged that on November [October] 21, 1948, in Eagle county, Colorado, Charles negligently drove a motor vehicle belonging to

the corporation against an automobile which was being operated by Cecil, causing Cecil serious and permanent personal injuries, for which he sought damages in the sum of $40,000.

In Lois' amended complaint the same allegations are incorporated, excepting only she alleges that she was a passenger in the car driven by Cecil, and that she suffered serious and permanent personal injuries, for which she sought damages in the sum of $50,000.

The amended complaints each contain three separate causes of action. In the first cause of action it is alleged that Grace, for herself and as president, general manager and agent of the corporation, loaned Charles the motor vehicle driven by him and involved in the accident. It further is alleged that Grace "well knew or should have known that the said Charles Greenwood was intoxicated at the time she loaned the said motor vehicle to Charles Greenwood, deceased, and was well aware that Charles Greenwood, deceased, would drive on the public highways of the State of Colorado in said condition and would thereby create a hazard."

In the second cause of action it is alleged that the corporation was owned by Grace and her brother as "a closely knit family organization and a sham and tool and that the said Defendant, Grace Greenwood, was at all times in full charge and control of the said certain motor vehicle driven by the said Charles Greenwood, deceased." Further in this cause of action it is alleged that "the said motor vehicle was intended and kept by the Defendant, Grace Greenwood, for her family use and particularly for the pleasure and convenience of her husband, Charles Greenwood, who was at said time and place, driving the said motor vehicle with the full knowledge and consent of his wife, the Defendant, Grace Greenwood."

In the third cause of action it is alleged that at the time of the occurrences of which complaint is made "Grace Greenwood by [Charles Greenwood] her agent, subagent, or employee, and the Royal Photo Service, Inc.,

a corporation by its agent, sub-agent, or employee, did negligently and carelessly drive a certain motor vehicle against an automobile" in which Lois was a passenger and Cecil was the driver thereof.

Defendants, in the first defense to the first cause of action, deny Charles' negligence; deny his intoxication; deny on information and belief that damages resulted to either Cecil or Lois, and admit the other allegations therein.

For a first defense to the second cause of action, deny Charles' negligence; deny that Grace kept the automobile driven by Charles for family use and for his pleasure and convenience; deny on information and belief the alleged injuries resulting to Charles and Lois, and admit the other allegations in said cause of action.

For a first defense to the third cause of action, deny that Charles was the agent, sub-agent or employee of either Grace or the corporation; and for a further defense to the amended complaints, defendants allege that the automobile involved in the accident belonged to the corporation and that Charles borrowed the same to go on a *fishing* excursion; that Charles was not the servant, agent or employee of the defendants, or either of them, nor was he at the time of the accident performing any service or business for the defendants, or either of them, but was "on a frolic of his own."

At the pretrial conference the parties agreed: To a trial before a jury of six; each counsel would, fifteen days or more before trial, furnish opposing counsel with the names of the witnesses to be called by him; that Charles Greenwood died as a result of the accident; an amendment to the answers might be made; and the cases consolidated for trial.

At the conclusion of plaintiffs' evidence, the defendants individually moved for judgment of dismissal based generally upon the ground that the evidence introduced was insufficient to support plaintiffs' position in any of their three causes of action, which motions were denied.

At the conclusion of all of the evidence defendants interposed a motion to require plaintiffs to elect upon which of the three causes of action they would proceed, this motion being based upon the inconsistency of the several causes of action alleged in the plaintiffs' complaints. This motion was denied. Defendants at the same time interposed separate motions for directed verdicts on each cause of action based upon the insufficiency of the evidence to support the same, which motions the court denied as to the first cause of action; granted as to the corporation on the second cause of action; and denied as to both defendants on the third cause of action.

The specifications of points are twenty-one in number, but our disposition of the causes requires the consideration only of those relating to the court's refusal to grant defendants' motions for judgment of dismissal or directed verdicts as to each cause of action, and these we will treat in the order set forth in the complaints.

■ 1. The first cause of action is based entirely on the theory of a bailment, and presents the question as to the liability of the bailor for damages resulting from the negligence of the bailee while in possession of the loaned instrumentality. In *Otoupalik v. Phelps,* 73 Colo. 433, 216 Pac. 541, decided June 4, 1923, in an opinion by Mr. Justice Campbell, our court said: "* * * if the complaint is otherwise sufficient, we proceed at once to consider the main question before us: the liability of a bailor to third persons for negligence of the bailee in using the subject of the bailment. * * * The general rule unquestionably is that a bailor is not liable to third persons for injuries resulting from the negligent use by the bailee of the thing bailed. There are exceptions to the general rule, under the doctrine of *respondeat superior,* as where the relation is that of master and servant, or where there is involved 'a family purpose,' or where the bailment is to an infant, lunatic or intoxicated person, or the thing bailed is in itself a 'dangerous instrumentality.' "

■ In the instant case we note that the court, on the

first cause of action, instructed the jury as follows: "You are instructed that the only theory upon which the plaintiffs can recover under the first cause of action in this case is that the said Charles Greenwood was intoxicated at the time the defendant Grace Greenwood loaned the automobile to him, and that the said Grace Greenwood knew, or should have known, of such intoxication. Therefore, unless you find the above facts to be true by a preponderance of the evidence, your verdict must be for the defendants on the first cause of action." This instruction states a correct principle of law, but there is no evidence in the record upon which to base it, and instructions given upon principles of law without evidence in the record to justify them may themselves constitute error because, inferentially, the jury is told by such instructions that there is some competent evidence upon which they are based.

Here in the first cause of action it is alleged in the amended complaints that at the time the automobile was loaned to Charles, Grace knew that he was intoxicated, and in such condition would drive upon the public highways and create a hazard. There is not a scintilla of evidence in the entire record to support this allegation, and the record is replete with evidence that at the time Grace loaned the automobile to Charles he was sober. Three disinterested witnesses so testified. There is no evidence in the record that Charles was a careless or reckless driver, nor is there any evidence that at any time he operated an automobile on the highway while under the influence of intoxicating liquor. There is no evidence in the record of his intoxication at the time of the accident, and if there was such evidence, this alone would not make the bailor liable to a third party who was injured by his negligence.

The general rule announced in *Otoupalik v. Phelps, supra,* is supported by 7 & 8 Huddy, Automobile Law (9th ed.), p. 225, §85; 2 Berry, Automobiles (6th ed.),

p. 1200, §1438; 6 Am. Jur., p. 409, §311; 8 C.J.S., p. 318, §40, and cases therein cited.

2. Plaintiffs concede that this cause of action is based on the family car doctrine. The uncontradicted evidence is that Charles was driving an automobile belonging to the corporation, of which Grace was the president, general manager, and the owner of one sixth of the outstanding capital stock, and had been such for some time prior to her marriage with Charles on May 15, 1948. The court granted the corporation's motion for a directed verdict on this cause of action, leaving Grace the sole and only defendant therein. Charles was the owner of a Ford pick-up truck; Grace the owner of a Chevrolet sedan, and, as we have said, the corporation was the owner of the truck involved in the accident.

Harold testified that he had been acquainted with Charles for some years and had ridden with him on various occasions, sometimes in Charles' Ford, sometimes in Grace's sedan, and sometimes in the corporation car; that on October 21, 1948, and the evening before that date, Charles was driving the corporation auto. This witness testified that he had ridden in the corporation automobile with Charles when Charles was performing some service for the corporation and also "off and on" to ball games, and a few other times he had seen Charles driving the corporation car.

Both witness and Charles hoped to bring some deer meat back with them. The expense of operating the automobile and all other expenses incurred while on the hunting trip were to be shared equally between witness and Charles.

Grace testified that the automobile involved in the collision was owned by the corporation and ordinarily was used daily by it in its business. She also testified that she gave Charles permission to use the corporation automobile on the hunting trip, and that on other occasions she also gave him permission to use the car for his own pleasure and convenience, but never without

her express consent, and that when he did so he paid for the gas and oil; further that in traveling back and forth from Indian Hills to the office, her Chevrolet sedan was the automobile ordinarily used by them.

The reason the corporation automobile was used by Charles on the hunting trip was the fact that his Ford pickup was being repaired for use as a service car in connection with his contemplated business. "The so-called 'family purpose doctrine' [family car doctrine] is one of comparatively recent origin and rapid growth. This doctrine holds the owner of an automobile which was purchased and maintained for the pleasure of his or her family liable for injuries inflicted by the machine while it was being used by members of the family for their own pleasure, on the theory that the car was being used for the purpose or business for which it was kept, and that the person operating it was, therefore, acting as the owner's agent or servant in using it. It is said to be one of the indispensable requisites of the family purpose doctrine that the person on whom it is sought to fasten liability under that principle owns, maintains, or provides an automobile for the general use, pleasure, and convenience of the family. * * * " 5 Am. Jur., p. 704, §365. See, also: 60 C.J.S., p. 1066, §433; 7 & 8 Huddy, Automobile Law (9th ed.), p. 320, §125, et seq.; 2 Berry, Automobiles (6th ed.), p. 1222, §1473.

The first case, so far as we are advised, in which the family car doctrine was considered by our court was *Hutchins v. Haffner,* 63 Colo. 365, 167 Pac. 966. There the factual situation as set forth in the opinion was that the husband and wife were accustomed to drive the automobile for their pleasure, the wife having the husband's general permission to drive it whenever and wherever she pleased. She was driving the automobile at the time of the accident for her own pleasure without knowledge of the husband that the automobile was being used, but, nevertheless, it was under his general permission. The automobile was purchased by the husband

for the purpose of being used by both himself and wife "for their pleasure, comfort, recreation, and convenience, and for the purpose of entertaining themselves and their friends and guests." We therein said: "A majority of this court have chosen to adopt the doctrine that a husband is liable for the injury inflicted by his automobile, which he purchased for family use, while it was being operated by his wife, solely for her own pleasure under his general permission to use the machine whenever and wherever she pleased, upon the theory that the wife was the husband's agent in carrying out one of the purposes for which the car was purchased and owned."

The Hutchins case was cited in *Boyd v. Close*, 82 Colo. 150, 257 Pac. 1079. Therein the factual situation was that Mrs. Phillips was the sole executrix of the will of her deceased husband, and continued to occupy the family residence, act as head of the family, and remained in possession of all of her husband's personal effects, including the family car. This car had usually been driven by the son, Dennis, with the consent and approval of his father and mother, and while being so used, an accident occurred resulting in an action against Mrs. Phillips, Dennis and the driver of the car. At the conclusion of the plaintiff's case, the trial court sustained Mrs. Phillips' motion for nonsuit, and a review was sought. In that opinion is the following statement: "The 'family car' doctrine has, for the past ten years, been the law in this jurisdiction. *Hutchins v. Haffner*, 63 Colo. 365, 167 Pac. 966, L.R.A. 1918A, 10008. Liability under that doctrine is not confined to owner or driver. *It depends upon control and use. Mrs. Phillips had control of this car and it was kept for family use, which meant principally for the pleasure and convenience of Dennis.* In the present instance that convenience and pleasure was to attend a dance, whether on his own account or to accommodate his cousin is immaterial. That Mrs. Phillips did not know of or expressly sanction the particular trip is also immaterial. It was clearly within the purview of the general

purpose for which the car was kept and used and her liability is thereby fixed." (Italics ours)

In *Boltz v. Bonner*, 95 Colo. 350, 35 P. (2d) 1015, in connection with the family car doctrine, it was held applicable under the principle announced in *Hutchins v. Haffner* and *Boyd v. Close, supra,* where the mother testified that the car "is for our own pleasure," "hers and Wilma's [her daughter]." Asked whether the car was bought to use for Wilma's pleasure, as well as her own, she said: "Well, I permitted her to use it when she asked me for it, and when it suited me to let her have it \* \* \* for her own pleasure." In this latter case, we there held that this testimony clearly established, *without contradiction,* that the automobile was at the daughter's disposal whenever her use thereof did not interfere with her mother's requirements, and the family car doctrine was held applicable.

It should be remembered that the court dismissed plaintiffs' second cause of action as against the corporation so that Grace is the only defendant interested in the second cause. There is some intimation that Grace was the head of the family, presumably to bring this cause of action within the family car doctrine as announced in some of the decisions, but in this effort plaintiffs wholly failed. The fact that the evidence disclosed that at the particular time of the accident Charles was not employed creates no presumption whatever that he was not the head of the family, and discharging his obligations as such. Counsel for plaintiffs call our attention to the opinion in *Hexter v. Burgess*, 52 Ga. App. 819, 184 S.E. 769, wherein our decision in *Boyd v. Close, supra,* was cited, and in connection with the Hexter-Burgess-Boyd opinion, counsel state that it is "on all fours with the case at bar." We have carefully considered that decision, and, without attempting herein to set forth all of the facts which distinguish it from the instant case, call attention to the following: "While the car belonged to a corporation, of which Mr. Hexter was

president, it does not appear that anybody ever used it *except Mr. Hexter and his wife. He furnished her the instrumentality which inflicted the injuries on the plaintiff and put her in charge of it.* The jury could have reasonably inferred that Mrs. Hexter was using it in family business, as she had gone shopping in the business district of Atlanta where she had lunch with her husband and was returning to her home. The car was kept in a garage of the apartment in which the Hexters lived. *The custody, control and use of the car being exclusively in the Hexters, the jury could well find that it was a family car.*" (Italics ours)

*Cook v. Mann et ux.*, 40 S.W. (2d) 72, is relied upon by plaintiffs to support their theory of family car doctrine, and likewise to support their contention that the verdict and judgment of the trial court are more or less binding upon this court. In that case Mann and his wife brought an action against Cook to recover for damages resulting to them in a collision with an automobile driven by Cook's seventeen year old son. The automobile so driven belonged to the employers of Cook. The trial court rendered a judgment in favor of the defendant, which was reversed by an appellate court, and judgment entered for plaintiffs in the sum of $2,500, whereupon the case was appealed, and the judgment of the appellate court reversed, and the trial court judgment affirmed. The reason for the reversal of the appellate court judgment and the affirmance of that of the trial court is stated as follows: "Since the findings of fact show that the car in question was not used by the son as a family car of his father, and since the findings of fact further show that the father was not negligent in any respect, and that the car did not belong to him, *and that he had never permitted his son to use it,* except on four occasions at most, and since the son, in taking the car and using it, did so for his own pleasure, and since there is no pleading that the father ratified the act of the son, under such circumstances as to make him

liable in damages for the negligence of the son, we conclude that the judgment of the Court of Civil Appeals should be reversed, and that of the district court affirmed, and we so recommend." (Italics ours)

We note that the trial court instructed the jury in the following language on the family car doctrine: "You are instructed that before you can find for the plaintiffs under the second cause of action, you must find from a preponderance of the evidence that the defendant, Grace Greenwood, *maintained the 1936 Chevrolet truck,* which was owned by the Royal Photo Service Company, *for the convenience, pleasure, and use of the members of her family, and that her husband was permitted to use said truck at will."* (Italics ours) We may assume that the instruction given the jury correctly states the law applicable to the family car doctrine. However, the record is entirely devoid of any evidence, direct or circumstantial, to justify the trial court in submitting the second cause of action to the jury, and, in so doing, over the objection of defendants, it committed error.

■ The third cause of action is based upon the theory of agency, it having been alleged that on the date of the accident Charles was acting as the agent, sub-agent or employee of both defendants, and as such negligently and carelessly caused the accident.

As we understand counsel's position, they say that the agency between Grace and Charles was created by the fact that "Grace Greenwood turned over the car in question to Charles Greenwood to go after deer meat for their mutual benefit and consumption. At the time and place of the accident Charles Greenwood was acting as agent of Grace Greenwood and in the course and scope of said agency. She furnished him a car for this purpose, a car for which she had the sole custody and control."

As to the agency relationship between Charles and the corporation, counsel say: "Charles Greenwood was driving to his destination [a point between Eagle and Rifle, Colorado, a distance of approximately 200 miles] for the

purpose of fixing the starter and working on the 1936 Chevrolet pickup truck owned by Royal Photo Service, Inc. * * *."

The adoption of plaintiffs' theory of agency between Grace and Charles on the evidence disclosed by the record here would extend that doctrine beyond all heretofore known limits. We have determined that the evidence here wholly fails to establish that the auto involved in the accident was a "family car." Consequently, if under the theory of agency as advanced by counsel here, Charles became Grace's agent and his hunting trip was within the scope of his employment and duties, then it is hard to conceive of any mission upon which either the husband or wife might proceed which would not create the relationship of principal and agent. If, under plaintiffs' theory of agency, the husband, at the request of the wife, drove an automobile, over which she had control, to the neighborhood grocery store to purchase a loaf of bread, and while so doing negligently damaged a third person, the wife would be liable therefor as the principal. This extension of the principal-agent doctrine is too fanciful to receive judicial approval.

As to the agency relationship between Charles and the corporation, it appears from the record that some time previous to the date of the accident the starter on the pickup truck was not operating satisfactorily, and at that time, upon suggestion of Charles, Grace stated that if he would fix it she would appreciate it. Charles put tools in the auto truck when starting on the hunting trip, and, according to Harold, they intended to repair the starter when they got to their destination. To say that Charles became the agent of the corporation and was acting within the scope of his employment in driving the pickup approximately 200 miles from Denver to do the repair work, and in so doing was within the scope of his employment, presents a situation which provides its own refutation.

Plaintiffs' counsel direct our attention to the opinion

in *Boulderado Motors, Inc. v. Peterson,* 100 Colo. 238, 66 P. (2d) 1269, where we affirmed a judgment against Boulderado Motors, Inc. on the theory of agency, but therein the following was said, which clearly distinguishes that case from the instant one: "To comment upon the strength or weakness of the testimony adduced before the jury would serve no useful purpose. The answer to one question: that is, whether or not Livingston was in the employ of defendant company at the time of the accident, and if so whether he was acting within the course and scope of such employment, controls the disposition of this controversy and as to this question—one of fact—*the testimony is in conflict.* To resolve such conflict was solely the jury's province, and its conclusion is final if the case was submitted to it upon proper instructions which fully protected the legal rights of defendant." Here, as we read the record, there is no conflict whatever in the evidence relative to either the employment or scope thereof.

In *General Food Sales Company v. Smith,* 105 Colo. 305, 97 P. (2d) 429, the question there determined did not depend upon agency but rather upon the agent's scope of employment. In that case there was evidence that the agent was on a mission within the scope of his employment, and, consequently, his principal was held liable.

As we consider the record here, there was no conflict in the evidence. There was a complete absence of competent evidence to establish that Charles was the agent of the corporation, and a complete absence of competent evidence, even assuming Charles was the agent of the corporation, upon which to establish that at the time of the accident he was acting within the course and scope of his employment.

The record discloses that two young people, without fault on their part, are permanently injured by reason of the negligence of Charles, and it is but natural that the trial court and jury were influenced by a desire to

alleviate their handicap, so far as could be done by monetary considerations. Upon a careful consideration of the record herein, we feel that we must hold that the trial court erred in refusing to dismiss the action at the conclusion of the plaintiffs' case in chief and in refusing to direct a verdict in favor of defendants.

The judgments are reversed and the cause remanded with instructions to dismiss the actions.