## No. 16,817.

PEOPLE EX REL. DUNBAR, ATTORNEY GENERAL *v.*
SAN LUIS WATER CONSERVANCY DISTRICT ET AL.
(261 P. [2d] 704)

Decided September 14, 1953.

193

Mr. Duke W. Dunbar, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. Charles M. Soller, Assistant, Mr. Richard E. Conour, of counsel, for Relator.

Messrs. Moses & DeSouchet, for Respondents.

Elizabeth A. Conour, amicus curiae.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

Our court granted the petition of the People of the State of Colorado, upon the relation of the Attorney General, to initiate proceedings "in the nature of a writ of quo warranto" in order to determine the validity of a decree entered by the district court in inclusion pro-

ceedings under the provisions of section 29 (b), chapter 294, 1951 Session Laws of Colorado, concerning water conservancy districts. The cause is at issue here on an agreed record together with the reporter's transcript of proceedings in the district court.

It is conceded that in this proceeding neither the validity of the original organization of the San Luis Valley Water Conservancy District, organized under the provisions of chapter 266, 1937 Session Laws of Colorado, nor any of the voluntary inclusions therein are questioned.

The only question presented here for our determination is the validity of the decree of the district court with reference to certain inclusion proceedings instituted August 8, 1951.

According to the agreed statement, on this last mentioned date there was filed in the district court a petition whereby it was sought to include in the San Luis Valley Water Conservancy District certain designated irrigated lands in Alamosa, Rio Grande and Saguache counties as well as all lands in the city of Monte Vista, the towns of Del Norte and Center, and the properties of the Denver and Rio Grande Western Railroad Company, and other designated public utilities in Alamosa and Rio Grande counties. The petition bore the signatures of seven owners of irrigated lands, but no signatures of the owners of property within the municipalities or of any of the utilities or non-irrigated lands. Upon the filing of said petition, an order was entered fixing October 10, 1951, as the date of the hearing on the petition and directing the publication of notice as provided by statute. On September 8, 1951, L. A. Ruark, a landowner of the town of Del Norte, F. C. Nelson, a landowner in the town of Center, and Frank Collins, a landowner in the city of Monte Vista, filed a motion to quash the notice of hearing; to vacate the order, and dismiss the inclusion proceedings because the same was not in compliance with the provisions of section 29 (b), chapter 294, 1951 Session Laws of Colorado, and, consequently, the court was

without jurisdiction of either the parties or subject matter. The Denver and Rio Grande Western Railroad Company, on the last mentioned date, filed a similar motion, contemporaneously with the filing of which there was filed in the district court protesting petitions signed by 272 qualified owners of land in the town of Del Norte and 52 qualified owners of land in the town of Center, as well as a special protest of the Denver and Rio Grande Western Railroad Company. On September 11, 1951, additional petitions for inclusion were filed signed by 145 qualified owners of land in the city of Monte Vista, 56 qualified owners in the town of Center, and 25 qualified owners in the town of Del Norte. On September 12, 1951, a hearing was held on the motions filed by L. A. Ruark and others, and the Denver and Rio Grande Western Railroad Company, and the motions were denied with leave to renew jurisdictional objections at the hearing on October 10, 1951.

At the hearing on October 10, 1951, it was stipulated that: There were 424 units of real property and 514 owners of the same in the town of Center; 887 units of real property and 1265 owners of the same in the city of Monte Vista, and 468 units of real property and 638 owners of the same in the town of Del Norte; prior to September 12, 1951, petitions for inclusion were filed by 145 owners of land embraced within the corporate limits of the city of Monte Vista, 56 owners of land within the corporate limits of the town of Center, and 20 owners of land within the corporate limits of the town of Del Norte.

At the said hearing petitioners called witnesses who testified as to the availability of water in the Rio Grande river; the feasibility and practicability of storage of the same; the resulting benefit to the San Luis Valley Water Conservancy District and the properties therein, as well as the properties described in the inclusion petition. No witnesses were called by protestants. The motions to quash the notice of hearing, to vacate the order for

hearing, and to dismiss the petition were renewed by moveants and again denied.

On October 24, 1951, the court entered its decree for the inclusion of the lands specifically designated in the inclusion petition, and therein found:

That the motion of protestants to quash notice of hearing, vacate the order for hearing, and to dismiss the petitions for inclusion, which were filed on September 8, 1951, argued on September 12, 1951, and denied, with permission granted to re-present the same at the hearing on October 10, 1951, should be and was denied;

That the protesting petitions were not signed by the number of landowners required by statute, and were, upon motion of petitioners, dismissed;

That the protestants declined to file objections to the inclusion petition and declined to stipulate that their petition be considered as objections;

That the property of the Denver and Rio Grande Western Railroad Company, and all other property included in the inclusion petition, will be benefited by the accomplishment of the purposes for which the San Luis Valley Water Conservancy District was formed;

That the court has jurisdiction of the person and the subject matter of this proceeding;

That the inclusion petition is in full conformity with the provisions of section 29 (b), chapter 294, 1951 Session Laws of Colorado, and that all matters and things required by law for the inclusion of the area described in the inclusion petition have been accomplished and that the provisions of paragraph 29 (b) have been fully and completely complied with, and the prayer of the petition should be granted;

That the board of directors of the San Luis Valley Water Conservancy District had filed a verified consent to the inclusion of such area upon the same terms and conditions as if the same had been a part of the original conservancy district.

In 1951 section 29, chapter 266, 1937 Session Laws of

Colorado was amended, and section (a) thereof is for all purposes identical with section 29, chapter 266, 1937 Session Laws of Colorado. However, in the 1951 amendment (sec. 29, chap. 294, 1951 S. L. Colo) of section 29, chapter 266, 1937 Session Laws of Colorado, section 29 (b) was added and in substance it provided a method whereby lands could be included in a water conservancy district through proceedings in the district court. Said section 29 (b) consists of seventeen paragraphs, and to quote the same would unduly lengthen this opinion; consequently, we shall number its paragraphs consecutively, and so refer to such of them as we consider necessary for a determination of this action.

Paragraph 1 sets forth the requirements for the inclusion of additional areas to an organized water conservancy district by filing a petition in the district court, signed by twenty-five per cent of the owners of irrigated lands in the area and outside of the corporate limits of a city or town, each tract of land to have an assessed valuation of not less than $1,000.00, and "also signed by not fewer than five per cent (5%) of the owners of non-irrigated lands and/or lands embraced within the incorporated limits of a city or town, all situated in the area embraced in said petition; * * *." Each such tract to have an assessed valuation of not less than $1,000.00. "Said petition shall set forth a general description of the territory in the area sought to be included * * *" and a statement that such property will be benefited by the accomplishment of the purposes for which the original district was formed.

Paragraph 2 is the counterpart of a section found in chapter 266, 1937 Session Laws. It reads: "No petition with the requisite signatures shall be declared null and void on account of alleged defects, but the court may at any time permit the petition to be amended to conform to the facts by correcting any errors in the description of the territory, or in any other particular. However, similar petitions or duplicate copies of the same petition

for the inclusion of the same area may be filed and shall together be regarded as one petition. All such petitions filed prior to the hearing on the first petition filed, shall be considered by the court the same as though filed with the first petition placed on file."

Paragraph 5 provides that immediately upon the filing of the petition specified in paragraph 1, supra, the court shall enter an order fixing a time and place for a hearing on said petition not less than sixty nor more than ninety days after the filing date thereof, and notice of the time and place given by publication.

Paragraph 7 provides for the filing of a *protesting petition* in the office of the clerk of the district court at least thirty days prior to the hearing on the petition for inclusion. This protesting petition must be signed by at least twenty per cent of the owners of irrigated lands in the area not embraced within the corporate limits of a municipality and not less than five per cent of the owners of non-irrigated lands and/or lands embraced in the corporate limits of a city or town, and the signers must be owners who have not signed the inclusion petition. Each signer of the protesting petition must state the lands owned by him and the value thereof as shown by the last assessment.

Paragraph 9 provides that on the day of the hearing the *protesting petition* shall be dismissed if it is not signed by the requisite number of owners set forth in paragraph 7, supra.

Paragraph 10 provides that if on the day set for the hearing the court shall find from the evidence that the protesting petition is signed by the requisite number of owners of land and of the requisite value, the original petition for inclusion shall be dismissed. "The finding of the court upon the question of such valuation, the genuineness of the signatures, and all matters of law and fact incident to such determination shall be final and conclusive on all parties in interest whether appearing or not."

Section 11 provides that any owner of real property

in the proposed area who has not signed the inclusion petition may object to the inclusion by filing written objections thereto on or before ten days prior to the date set for the hearing of the inclusion petition.

Paragraph 14 provides that if on the date fixed in the notice it shall appear to the court that the inclusion proceeding petition has been signed and presented as provided in paragraphs 1 and 2, supra, and the allegations thereof are true, and that the protesting petition has been dismissed as provided in paragraph 9, supra, it shall then proceed to "adjudicate all questions of jurisdiction, and declare the area included in the district * * * as fully as if said area had been included in the original petition * * *." It then provides that prior to the entry of the decree the court shall obtain a verified consent of the board of the district to the inclusion of the area specified in said inclusion petition and the terms and conditions upon which the inclusion shall be effected.

Paragraph 15 provides for the dismissal of the inclusion petition if the same is not in full conformity with the provisions of the statute or that the material facts set forth in said petition are not proven. No appeal or writ of error shall lie from the order dismissing any inclusion proceeding.

Paragraph 16 provides that the order of inclusion of the area designated in the petition therefor shall be final and conclusive against all persons except the State of Colorado, and further provides that an action in the nature of quo warranto may be commenced by the attorney general within three months after the entry of the decree for the purpose of challenging the validity of the decree establishing the inclusion of the area set forth in the petition therefor.

The eleven specifications of points filed by relator are consolidated, presented, and argued here as follows:

1. The petition for inclusion was insufficient to confer initial jurisdiction; 2. the entire petition for inclusion was insufficient because it did not describe any area

sought to be included, but included only isolated parcels of land, property in three municipalities and property of specific individuals and corporations; 3. the circumstances surrounding the petition for inclusion amounted to a fraud on the court and the owners of property sought to be included; 4. the petitions for inclusion were insufficient and lack of requisite number of qualified signatures; 5. the sufficiency of the evidence. We shall consolidate specifications 1 and 4.

1. and 4. Here it is conceded that the original petition for inclusion of lands and property therein described bore the signatures of seven owners only of irrigated property in the proposed area, and that there were no signers owning property in the towns of Center and Del Norte or the city of Monte Vista or any signer for the public utilities mentioned in the petition. The seven signers on the inclusion petition were the owners of all of the irrigated lands to be included in the district. Counsel for relator then take the position that paragraph 1 of section 29 (b), supra, required the inclusion petition to be signed "* * * by not less than 25% of the owners of irrigated lands, *5% of the owners of town property, and 5% of the owners of non-irrigated lands within the area to be included, * * *"* and this not appearing, the inclusion petition was wholly insufficient.

Counsel for relator admit that on September 11, 1951, and prior to the hearing on the motions to quash the notice of hearing, vacate the order for the same and to dismiss the inclusion proceedings, there were filed similar or duplicate inclusion petitions by 9.2% of the owners of real estate in the city of Monte Vista and the towns of Center and Del Norte when the municipalities are considered as a unit, but if Del Norte is considered separately, only 3.1% plus of the landowners therein had signed.

In paragraph 2, supra, we quoted that portion of said section 29 (b) upon which the trial court based its determination that the original petition, when supplemented

as therein provided by similar petitions or duplicate copies of the original petition for inclusion, together totalling five per cent of the owners of non-irrigated lands in the area or five per cent of the owners of real estate in the municipalities designated in the inclusion petition, was legally sufficient and fully complied with the requirements of the statute for petitions under paragraph 1, supra.

The Water Conservancy Act (page 1309, chapter 266, S.L. '37) was amended by chapter 174, page 592, S.L. '39; chapter 250, page 737, S.L. '49, and chapter 294, page 827, S.L. '51, and in all thereof, except said 1951 amendment, no change was made in section 29 of said 1937 Act. The 1937 Act with amendments thereto provide a complete and exclusive procedure for organization of water conservancy districts, as well as the exclusion and inclusion of property therefrom or thereto. There is provided in said Acts, as amended, one hearing only on the sufficiency of the petition for inclusion and protests thereto, and in the present proceeding this hearing was to be held on October 10, 1951, and was so fixed in the order and published notice. The gravamen of protestors' motions to quash notice of hearing, vacate order for hearing, and to dismiss the inclusion proceeding was the insufficiency of the inclusion petition, as a consequence of which the court would be without jurisdiction other than to dismiss. There was no objection interposed to the hearing on this motion on September 12, 1951; however, the court correctly held that its jurisdiction was dependent upon the legal sufficiency of the inclusion petition, and this was to be determined at the hearing on October 10, 1951, at which time the original inclusion petition, supplemented by similar or duplicate petitions then filed, were, as we have said, legally sufficient.

We find in chapter 266, page 1315, S.L. '37, chapter 175, page 593, S.L. '39, chapter 238, page 658, S.L. '47, and in chapter 1, page 15, S.L. '22, Extraordinary Session, almost identical counterparts to paragraph 2 of the 1951

Amendatory Act, supra. In *People ex rel. v. Lee,* 72 Colo. 598, 213 Pac. 583, brought under the 1922 Conservancy Act, supra, the first contention of the relator was that the court had no jurisdiction to enter the order (publication) because "there was no determination, judicial or otherwise, * * * as to the sufficiency of said petition prior to the publication of notice of hearing thereon." In disposing of this contention we stated, "The answer to this contention is that there was no necessity for a determination of the sufficiency of the petition 'prior to the publication of notice.'" As we construe this language in *People v. Lee, supra,* upon the filing of any petition otherwise complying with the provisions of paragraph 1 hereof, it is the court's duty immediately to enter the order of publication provided in paragraph 5, supra, and the sufficiency of the petition giving the court jurisdiction is to be determined on the record at the time of the hearing fixed in the order of publication and not otherwise. Counsel for relator call our attention to decisions in other jurisdictions which they say should be followed by us in this jurisdiction. The statutes under which these decisions in other jurisdictions were announced are not brought to our attention. However, those which we have examined are so materially different in their provisions that decisions announced therein are not helpful here. We have found no statute in any jurisdiction which we construe to be the equivalent of our statute found in paragraph 2 hereof.

■ Paragraph 5 mandatorily requires the court on the filing of an inclusion petition to make an order fixing a time and place for a *hearing* thereon and to cause published notice to be given thereof. Paragraph 2 provides that similar or duplicate copies of the petition may be filed prior to the *hearing* on the first inclusion petition and also that all such petitions filed prior to the date fixed in the order and published notice "shall be considered by the court the same as though filed with the first petition placed on file." Paragraph 14 provides that

if, upon the *hearing,* and one only is specified or mentioned in the Act, it shall appear that the petition for inclusion has been signed and presented as provided in the Act and that the allegations of the petition are true, then, and then only, and for the first time, the court determines the question of the sufficiency of all of the petitions for inclusion and adjudicates jurisdictional questions and proceeds further as in paragraph 14 provided. It is our duty to construe the Water Conservancy District Act so as to give force and effect to all of its provisions; accordingly, under the provisions of the Act, the court was not empowered to determine its jurisdiction until the date fixed in the order and published notice, and until full opportunity had been afforded all persons desiring to file similar or duplicate petitions to do so, and when similar and duplicate petitions were filed, all must be considered as if filed contemporaneously with the first petition. Such construction gives force and effect to the statute.

It is admitted that the protesting petition did not contain the signatures of any owners of irrigated lands in the area described in the inclusion petition, and this made it obligatory upon the trial court on the day for the hearing to dismiss the protesting petitions and then left for the court's determination the legal sufficiency of the inclusion petition only.

Counsel for relator in their brief contend that the initial petition must show a substantial compliance with the provisions of paragraph 1, supra, before the court may take jurisdiction, and in this connection say that the initial petition "must in this case have had the signatures of owners of at least five per cent of non-irrigated lands and five per cent of the municipalities involved." This is counsel's construction of the conjunctions "and/or." With this contention we do not agree for it is a complete elimination of the conjunction "or." We do not approve of the conjunctions thus used (*Boulderado Motors, Inc. v. Peterson,* 100 Colo. 238, 66 P.

[2d] 1269; *Trujillo v. People*, 116 Colo. 157, 178 Pac. 942), but we construe them as if the statute read, "either five per cent of the owners of non-irrigated lands or five per cent of the owners of lands embraced within the corporate limits of a city and town."

On the day fixed by the order and notice, the trial court determined that the original inclusion petition, together with similar or duplicate petitions theretofore filed by petitioners, contained the signatures of sufficient owners of various classes to give it jurisdiction of the persons and subject matter, and in so doing no error was committed.

2. It is contended that the petition for inclusion was insufficient because it did not describe any area sought to be included. Paragraph 1, supra, provides: "(b) In addition to the method provided above, additional areas, either contiguous or non-contiguous to the district, * * * may be included in the district by petition, * * *. Said petition shall set forth a general description of the territory in the area sought to be included in the district, * * *." It is apparent that contiguity is not required in the additional areas to be included in the district, and it is equally apparent that the inclusion petition is not to include the area but rather territory in the area. This is made apparent by the provision that the petition shall set forth a general description of the territory in the area. If the area in its entirety was to become a part of the district by the inclusion petition, all the territory therein would necessarily be part of the district. Until the enactment of chapter 294, page 827, 1951 Session Laws of Colorado, the only authority granted by legislation to hear petitions for inclusion was vested in the board of the conservancy district. As we construe paragraph 1, supra, an area contiguous or non-contiguous to the district may, by petition, be made a part of the district, and it is not the area but the *territory in the area* which the amendatory statute requires the petition to "set forth a general description of the *territory in the area* sought to

be included in the district, the name of the district in which it is sought to be included, a statement that the property sought to be included will be benefited by the accomplishment of the purposes for which the original district was formed, and shall pray for the inclusion of the area in the district."

 Generally it may be said that an area is a particular extent of surface. It is rather an elastic term not easily definable; it means a surface or a region or a territory, and, of course, contiguity is not a prerequisite. Here area is used in connection with and subordinate to "district" and any surface or region or territory on petition of the designated owners and verified consent of the board may properly be included in the district in the absence of the statutory protest provided in the Act. We believe the petition here in question contains a general description of the *territory* in the area sought to be included in the district. Any other construction of paragraph 1, supra, would do violence to all recognized rules of statutory construction. Counsel for relator, as well as respondents, direct our attention to cases which they say by analogy or direct decision are controlling in connection with this specification. With this we do not agree. So far as we have ascertained from the authorities cited, as well as our own research, there are no decisions construing statutes similar to ours, which are helpful in connection with this specification.

 3. Counsel for relator take the position that the petition for inclusion amounted to a fraud on the court and the owners of property sought to be included. We have heretofore determined the legal sufficiency of the inclusion petition; it conferred jurisdiction on the court; the procedure set forth in said section 29 (b), supra, was followed, and if hardship results therefrom, it is a legislative rather than a judicial problem. The record discloses no fraud either on the court or protestants.

5. In the decree for the inclusion of the lands here in question, the court found: "That all of the property

sought to be included would be benefited by the accomplishment of the purposes for which the original district was formed." It might be inferred from the record that one of the purposes for which the original district was formed was a storage reservoir, and there is positive and undisputed evidence in the record that a storage reservoir was practical and feasible, providing irrigation water for lands which are now more or less arid. This evidence was competent; the finding of the trial court is binding, and it will not be disturbed.

Under the five specifications here, ancilliary matters are presented, but in the determination of this cause we do not deem it necessary to discuss them. This cause came at issue here on January 8, 1953, and was orally argued on May 5, 1953.

 We have determined that the district court followed the provisions of said section 29 (b) of the Water Conservancy District Act, thereby acquiring jurisdiction of the persons and subject matter, and that it thereafter proceeded in said cause in accordance with the procedural provisions thereof. Consequently, there is no relief which this court can grant in a proceeding in the nature of quo warranto, and, accordingly, the action is dismissed.