No. 16,893.

People ex rel. Dunbar, Attorney General *v.* Proposed Toll Gate Sanitation District et al.
(261 P. [2d] 152)

Decided June 1, 1953. Rehearing denied September 14, 1953.

34

Mr. Duke W. Dunbar, Attorney General, Mr. Charles M. Soller, Assistant, Mr. Julian P. Hancock, of counsel, for relator.

Mr. J. V. Condon, Messrs. Pershing, Bosworth, Dick & Dawson, Mr. Robert M. Johnson, for respondents.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

As provided in the Act here involved, the People of the State of Colorado, upon the relation of the duly elected and qualified Attorney General, commenced this original action in the nature of quo warranto within thirty days after the date of a decree declaring a sanitation district duly organized. Counsel for the relator contend that the organizational election of the proposed sanitation district is void. The decree here under attack is a result of proceedings had under a petition for organization of a sanitation district filed on October 8, 1951 involving a district partly in Adams county and partly in Arapahoe county, on the dividing line between said counties immediately east of Aurora and Fitzsimons Army Hospital. The petition purports to be in accordance with chapter 175, S.L. '39, and "all acts amendatory thereof and supplemental thereto." Chapter 253, S.L. '49 purports to be a re-enactment and amendment of former Acts relating to such districts, and, for the purposes here, the latter session law will be generally considered.

Opposition to some points presented by the relator, are made by respondents on the ground that such objection as the relator is now making was not made until after an election had been held. In taking this position, counsel for respondents overlooked the questionable terms of the Act, to the end that when an order is entered establishing a district, that order shall be deemed final and no appeal or writ of error shall lie therefrom except by the State of Colorado upon relation of the Attorney General. The individuals affected and who may feel aggrieved, are precluded from court procedure in the protection of their rights and are wholly at the mercy of the Attorney General, who may or may not

proceed, as he may be advised. The relator, having proceeded, as here, we find nothing in the Act which remotely indicates any limitation of the raising of the questions here presented or any other that might be indicated. We can better examine the statute and the proceedings had thereunder, by first noting the infirmities claimed by the relator, which are, namely: That the trial court erred in decreeing the proposed district duly organized for the reason that nonresidents of said district were permitted to vote in the organizational election in sufficient numbers to have changed the results of the election; that illegally printed ballots were used at the election; that at the election, some persons were permitted to vote who, for purposes of their qualification as tax-paying electors, presented only tax receipts issued in the name of their spouse; that it was error to decree that Stone and Venerable were duly elected directors of the proposed district, because they were both nonresidents of the district; and finally, in decreeing that Stone, Maul, Venerable, Ford and Thornber were duly elected directors because the name of each of said persons was unlawfully printed upon the ballots used in the organizational election.

As heretofore indicated, the 1949 Session Act, being the latest legislative expression on the subject matter, will generally be followed in this discussion in determining the intent of the legislature. Inconsistencies and irregularities, as well as questionable enactments, pervade and permeate all of the legislative Acts culminating in the 1949 result. We find section 23 of the 1947 Act repealing all sections 1 to 15 inclusive, chapter 173 A, '35 C.S.A. On examination of the latter chapter we find that sections 1 to 15 were the laws of the 1947 session; then, we find in section 1 of chapter 253, S.L. '49, that section 23 of chapter 238, S.L. '47, "be and the same is hereby repealed." Where do we go from here? In wondering amazement, we find that section 2 of the 1949 Act re-enacts sections that have been repealed and re-

repealed, and supposedly amended along with the re-enactment. To definitely ascertain the intent of this latest legislative expression requires a careful study of the various enactments by nearly every legislative session since 1935, and it may be said that there is not a clear indication of what the 1949 Act really amends or re-enacts, but we find the salient and controlling features of that Act to be as follows: (1) That the legislative declaration is, that the organization of "sanitation districts" will serve as a public use and will promote the health, safety, prosperity, security and general welfare *of the inhabitants* of said districts. (2) A "tax-paying elector" is a person qualified to vote in general elections in this state who has paid a general tax on real or personal property owned by him or her within the district in the twelve months immediately preceding a designated time or event. (3) Jurisdiction is given to the district court in and for any county in which all or any part of the proposed district may be located. (4) The organization shall be initiated by petition filed with the clerk of such court, and be signed by not less than ten per cent, or 100 of the tax-paying electors *of the district,* whichever number is the smaller, and tracts of twenty acres or more not to be included without the consent of the owner. (5) The petition shall set forth the name of the proposed district; the description of the improvements to be constructed or installed for the district, cost of the proposed improvements, and the description of the boundaries with such certainty as to enable a property owner to determine whether or not his property is within the district; and finally, a prayer for the organization of the district. (6) Amendments to the petition are allowed for the correction of alleged defects in the description of the territory or any other particular, and the amendment shall be considered as though filed with the first petition. (7) Immediately upon the filing of such petition, the court shall fix a place and time not less than twenty, nor more than forty, days after the

petition is filed for hearing thereon, and cause notice of the pendency of the petition to be made by publication, and a copy mailed to the board of county commissioners of the county or counties involved. (8) On said hearing, if the court finds that no petition has been signed and presented in conformity with the Act, it shall dismiss the proceedings and adjudge the costs against the signers of the petition in such proportion as it shall deem just and equitable. (9) At any time before the day fixed for a hearing, owners of property within the district may file petitions seeking exclusion of their property from the district. (10) On said hearing, if it appears that a petition for the organizational district has been signed and presented as hereinabove provided in conformity with this Act, and the allegations of the petitions are true, the court shall order and direct that the question of organization shall be submitted to the *tax-paying electors of the district* at an election to be held for that purpose, and by such order appoint three tax-paying electors of the district as judges of the election. Publication of time and place of the election to be given by the clerk of the court, which time shall be not less than twenty days after the first publication of the notice. (11) "Such election shall be held and conducted as nearly as may be in the same manner as general elections in this state," there shall be no special registration for such election, but for the purpose of determining qualifications of electors, the judges shall be permitted to use the last official registration list of the electors *residing in the district,* and they may require the execution of an affidavit concerning the qualification of any other electors. (12) The voters are to vote for or against the organization of the district, and for five *tax-paying electors of the district.* (13) The judges are to certify the returns of the election to the court and if the returns show that a majority of the votes cast favor the organization, the court shall declare the district organized and given the corporate name designated in the petition; the

district shall be a governmental subdivision of the State of Colorado and a body corporate with all the powers of a public or quasi-municipal corporation. When this order is entered, such order shall be deemed final and no appeal nor writ of error shall lie therefrom; and the entry of such order shall finally and conclusively establish the legal organization of the district against all persons except the State of Colorado in an action in the nature of a writ of quo warranto commenced by the Attorney General within thirty days after said decree declaring the district organized, and not otherwise. A copy of the decree is to be recorded in each county of which the district may be composed.

Other features and provisions of the act not material or of consequence for the purposes of this litigation, of course, are not set out or quoted, to prevent undue length of this opinion.

 In considering and construing the language of the Act as applied to the present cause, we must constantly keep in mind the real and underlying objects and purposes of the Act, and any construction must harmonize with such objects and purposes. We thus approach the expressed declaration of intention in the formation of such *sanitation districts*, and must not overlook that this is an expression of the unquestioned police power of the state in serving a public use for the "health, safety, * * * of the inhabitants of said districts." Sanitation districts, as thus will be seen, are not created for the purpose of improvements or benefits to land, as may be the case in the organization of other kinds of districts, but are for the inhabitants of the district. Of course, inhabitants of the district who are not property owners therein, cannot force the tax burden and expense for the creation of such districts upon otherwise unwilling property owners within the district. Otherwise, a district composed almost entirely of tenants could, for temporary benefit, place exorbitant tax burdens upon their landlords by virtue of the fact that such

tenants had paid personal property tax within the twelve-months period prior to any election they had caused, under the terms of this Act, to be held in the organization of such a district.

■ At this point, we consider what took place in the election that here is questioned. The Act, as it concerns hearings on such petitions as are filed, does not make any provision for any determination by the court to ascertain from the tax rolls of the county or counties in which the district is located from the last official registry lists, and from other evidence that may be adduced, that the requisite number of tax-paying electors *residing within the proposed* district have signed the petition, as is provided by all of the former Acts involving the organization procedure, unless it be said that the present 1949 Act re-enacts such provisions. The legislature surely intended that the court should have such a hearing, as indicated, to determine the validity of the petition.

■ Assuming — as is our clear right under the facts as presented — that the trial court examined the petition, and directed that the question of the organization be submitted to the tax-paying electors in the district at an election, and, since there is no question raised as to the time and notice of said election, we believe that the election was regularly held by judges named in the order fixing the time and place of the election. As appears, seventy-four persons voted at the election, forty-one in favor of the organization and thirty-three against. It is shown, and not disputed, that a considerable number, approximately twenty or twenty-four persons, voted, over the objections and protest of one of the judges of the election, who were not residents of the district, but seemed to qualify as being taxpayers on property within the district. A few persons were allowed to vote on exhibition of a tax receipt showing that the taxes were paid by their spouse. And it further is undisputed, that two of the directors, voted for and elected, were nonresidents of the district, and that bal-

lots bearing the title, "Official Ballot," were printed with the names of all of those it is contended were elected. It is not disputed that such printed ballots were not authorized by the court having direction and control of the election procedure. We note that nominations for the office of director is nowhere provided for in the Act, and it would therefore appear to be the clear intent of the legislature that qualified voters use a blank ballot.

Confusion seems to exist concerning the question of the residency of "tax-paying electors." Analysis of the application of any definition must be determined by not only the wording of the statute, but its objects and purposes. First, in order to vote at an organizational election, the voter must be an "elector." To be an elector is to meet the requirements of the qualifications under our general election laws, and that qualification standing alone would enable the voter to vote in such an election as is here questioned; however, being a qualified elector with the usual voting franchise is not sufficient under the terms of the Act. He must be an elector "of the district," and in addition thereto a tax-paying elector. Does an otherwise qualified elector, residing elsewhere in the state, owning property within the district involved and paying taxes thereon, meet the statutory requirement? A consideration of all the terms of the Act compels a negative answer. The Act does not say, "of the state," or any place else, but definitely says "of the district" and that means an elector of the district and not simply a taxpayer on property within the district. Our conclusion thus reached on this subject is fortified by a paragraph in section 7 of the Act, which reads as follows: "Such election shall be held and conducted as nearly as may be in the same manner as general elections in this state. There shall be no special registration for such election but for the purpose of determining qualifications of electors, the judges shall be permitted to use the last official registration lists of electors residing in the district, and they may require the execution of an affi-

davit concerning the qualifications of any other elector."

██ It thus is seen that it was the intention of the legislature that in determining the qualifications of electors who presented themselves, the judges be permitted to use the last official registration lists of electors *residing in the district.* If they used such lists and found than an elector desiring to vote was not on the official registration lists of electors residing in the district, and thereby refused the right to vote, it could not be contended that such refusal would give rise to a contest. The intention of the legislature thus expressed would apply on this question whether a registration list was used or provided for the judges or not, therefore it seems unquestionably clear that voting rights in such an election are confined to electors residing in the district, and votes that were cast and counted of nonresident taxpayers should be excluded from the final results.

For the purposes of this review, it has been stipulated that at the election, the judges did not use the "last official registration lists of *electors residing in the district* * * *." The Act provides that they may be permitted to use such lists for the purpose of determining qualifications of electors; however, the court in its order submitting the question to the electors, did not so advise the judges of this permissive use, only telling them that they would be permitted to use, and may require, an execution of an affidavit concerning the qualification of any elector. This oversight in the order could have had its effect on determining the qualifications of the voters, because, if the judges had availed themselves of the last official registration lists, they could have obtained the qualifications therefrom.

As hereinbefore said, practically all of the legislation over the former years makes clear that the electors must reside in the district and as hereinbefore indicated, there is such an unreconcilable confusion between what is amended and re-enacted by the 1949 Act as it relates to former legislation, that we must look to fragments of the

Act, as it now exists, that indicate the intention clearly expressed in former Acts. If the present Act was entirely silent as to such words as "welfare of the residents of said district," "taxpaying electors of the district," and the matter of the judges using the registration lists of electors "residing in the district," then we might be encroaching upon the legislative field in so holding; however, the Act is not silent on these matters, and therefore we follow along with a reasonable construction as to the legislative intent.

On the question of nonresident taxpayers being elected directors of the district, what we have heretofore said concerning tax-paying electors of the district applies with full force. Residency within the district is a prerequisite to voting and qualification of a director.

■ At the election, it is shown, and not disputed, that over the protest of one of the judges some persons were permitted to vote on the strength of exhibition of a tax receipt issued in the name of the other spouse. The statute is unmistakably clear that a person qualified to vote is the one who has paid the tax on property owned by him or her within the district. In sum, the voter must have paid a tax, it must be on property owned by the voter, located in the district, and paid within the preceding twelve months. The presumption raised by the tax receipt issued in the name of another is not overcome by an affidavit filed at the time, which may be self-serving. It follows that votes thus cast are illegal.

■ On the question of the use of the printed ballots as hereinbefore described, counsel for respondents contend that since the Act provides that organizational elections in sanitation districts are to be "held and conducted as nearly as may be in the same manner as general elections in this state," then the general election law applies to require the use of ballots containing the names of the alleged candidates printed thereon. We see no such application of the general election laws to the situation before us. Other parts of such laws require that before

44

a candidate is entitled to have his name printed on the ballot he must have been nominated under the means provided, and his nomination finally certified. Here, there was no nomination procedure, and there was no authorization or designation of the ballot printed by an individual as "official ballot." There is nothing in the law, as we find it, on the question of the duties and functions of the election judges that even indicates that they have or possess any power to indicate, directly or indirectly, as here, who had been nominated as candidates, as might well be presumed from the use of such an unofficial ballot. Further, we find nothing in the Act that indicates any authority on the part of the judge to indicate whose names shall, or shall not, appear on the ballot. We believe more definite legislation could have been enacted for the direction and guidance of the conduct of such organizational elections; however, we do not concern ourself about the wisdom of legislation, we simply find that clear and definite provisions concerning the question now under discussion are lacking.

As we find the present 1949 legislative enactment on organizational procedure for sanitation districts, such a state of confusion exists as to eliminate clear distinction or demarcation, therefore, trial judges, especially here, have our sympathy in their conscientious efforts to properly proceed thereunder.

In conclusion, we are confident that had our views, which are herein expressed, been followed at the election involved, as well as the determination of the sufficiency of the petition in the first instance, a number of votes which were cast and counted, would have been rejected, or the person appearing not permitted to vote, in a sufficient number as to have changed the results of the election, and therefore, since the irregularities herein discussed occurred, it vitiated the organization; consequently, the organization election was, and is, void, and the order entered by the district court establishing the district is ordered set aside and held for naught.

Mr. Chief Justice Stone, Mr. Justice Alter and Mr. Justice Moore concur in the result.