343 P.2d 812 (1959)
PEOPLE of the State of Colorado, upon the relation of Duke W. DUNBAR, Attorney General of the State of Colorado, Relator,
v.
SOUTH PLATTE WATER CONSERVANCY DISTRICT, a quasi-municipal corporation, and William E. Eppinger, B. R. Fernald, Al Hattendorf, S. F. Bales, J. D. Mayhoffer, Mills E. Bunger, Ernest Ramstetter, Neil Rosener, W. E. Scott, George L. Anderson, Rollo Shaklee, Howard P. Bunger, Henry G. Mitze, Charles H. Starks, J. William Wells, O. C. Gossett and Alfred Krogh, as Directors of the said South Platte Water Conservancy District, Respondents.
Virginia W. HILL et al.
v.
J. David MAYHOFFER et al.
Charles W. MacLEAN et al.
v.
J. David MAYHOFFER et al.
Nos. 18471, 18396, 18398.
Supreme Court of Colorado, En Banc.
June 22, 1959.
Rehearing Denied September 14, 1959.
*814 Duke W. Dunbar, Atty. Gen., Frank E. Hickey, Deputy Atty. Gen., John B. Barnard Jr., Asst. Atty. Gen., for relator, M. O. Shivers, Jr., Englewood, John M. Dickson, Denver, of counsel.
David J. Miller, Melvin Dinner, Robert G. Smith, Greeley, Wilbur M. Alter, Denver, for respondents.
Holland & Hart, Robert P. Davison, Denver, for objector, Lawrence C. Phipps, Jr.
J. F. Little, Robert H. Kiley, Denver, for objectors, John W. Jurgensen, and others.
*815 Clayton & Gilbert, Greeley, for Northern Colo. Water Conservancy Dist.
F. T. Henry and Louis Johnson, Colorado Springs, for City of Colorado Springs.
Bentley M. McMullin, Aurora, Orrel A. Daniel, Leonard H. McCain, Brighton, George M. Graber, Arvada, Joseph J. Dolan, Boulder, C. Charles Buchler, Englewood, Karl R. Ahlborn, Greeley, John S. Hough, Longmont, R. Paul Brown, Fort Lupton, amici curiae.
MOORE, Justice.
Three cases pending in this court have been consolidated for disposition. They involve the legality of a water conservancy district allegedly created under the provisions of chapter 149, article VI, C.R.S. 1953.
The statutory procedure for the creation of such a district involves the filing of originating petitions. These must contain a fixed number of signatures of owners of lands of certain types, a description of the boundaries of the intended district, and a statement of the objects and purposes of the proposed district. The proponents have the right to select the district court of any county having land within the boundaries described in the original petitions as the forum for the proceedings. The court thus selected sets a hearing date in accordance with the statute, and publication of notice is made. These original petitions may be opposed by the filing with the court of protesting petitions which must be signed by a certain number of owners of lands of certain types, and by the filing of "objections" which are by statute confined to a denial of the truth of the allegations set forth in the original petitions. The time for the filing of protests and objections is fixed by the statute, which also sets the time for filing supplemental originating petitions.
The three cases which are here consolidated arose in the following manner:
First. Petitions seeking the creation of the water conservancy district here in question were filed; protesting petitions were filed in due time; a hearing on the sufficiency of the protesting petitions began June 19, 1956, and ended April 25, 1957; the trial court adjudged said protesting petitions to be insufficient and ordered the same dismissed. Certain protestants thereupon caused writ of error to issue directed to said judgment of dismissal. This action is No. 18396 in this court.
Second. Other interested parties filed "objections" traversing the truth of the allegations of the originating petitions. The hearing thereon commenced June 18, 1957, and ended August 15, 1957, on which date the lower court dismissed said objections. Certain of these objecting parties who were not represented by counsel in the trial court thereafter initiated writ of error proceedings in this court in cause No. 18398.
Upon the dismissal of the "objections" on the date last above mentioned, the trial court forthwith conducted a hearing concerning the sufficiency of the originating petitions, and immediately upon the opening of this hearing, and before any evidence was taken, counsel for the proponents filed a written motion to amend the originating petition. This motion contained the following:
"Come now the petitioners herein by their attorneys and subsequent to the dismissal of the protesting petitions as by order of Court dated April 25, 1957, provided, and subsequent to the presentation by the objectors of testimony in support of the objections and denials of allegations of the petition generally, all as provided by the Court's order of January 22, 1957, as amended February 5, 1957, and the objectors herein having put on evidence on their main case, the petitioners having put on their testimony, and the objectors having put on their rebuttal, and the Court having called for the appearance of all counsel and all present in Court who were objecting to the creation of the proposed district, and the Court having entered all appearances of counsel *816 and the objectors having been dismissed as by order herein provided, the petitioners now rise and file herewith the following motion:
"1. The petitioners call up all motions for amendments to the petitions heretofore filed herein.
"2. The petitioners herein move to amend the name of the proposed district and the caption in this case to read, `South Platte Water Conservancy District' by striking in the petition and in all subsequent pleadings the words, `Blue River'.
"3. The petitioners herein further move that the petition herein be amended by adding after the description of the boundaries of the district following the paragraph designated Weld County, the following exceptions: * * *."
At this point the motion identified all property within the boundaries of the cities of Aurora, Englewood, Golden, Littleton and the Town of Cherry Hills Village, together with all the property owned by each individual objector represented by counsel, except Adee, et al. The motion requested exclusion of all of this property solely on the ground as stated therein, "that it is to the interest of the petitioners that the above-described property be omitted from the district."
Counsel for proponents made the following statement to the court:
"Mr. Miller: If the Court please, these motions are substantially in accordance with the written pleadings of the Objectors whose names and whose descriptions we have read. They grant the complete relief requested by those persons.
"It is our position that we, under the powers of the Water Conservancy Act and under the authority of the cases construing it and under the general law with which your Honor is familiar and which has been cited in previous briefs before this Court, have the right to amend the petition. The Court has a right to grant the amendment and the Objectors named, being all those who have resisted in any manner the creation of the district to this time, having been by the motion excluded, upon allowance of the motion their interest in the matter terminates."
Attorneys for some of the objectors protested the granting of the motion and asked for a continuance, stating to the court that the motion took them by surprise and that they were not prepared to respond thereto; whereupon counsel for proponents stated:
"On the basis of the record we respectfully submit, Your Honor, that it is to the interests of the petitioners that the expense and continued delay in litigation be terminated by giving those who have properly appeared all relief which they ask, and that they then be requested to depart hence, having won their victory."
The trial court granted the motion made by proponents. The effect of this action by the court was to reduce the assessed valuation of the area included within the district from 441 million dollars to approximately 323 million dollars. Following the granting of the written motion counsel for proponents agreed that the lands owned by Adee, et al. should likewise be withdrawn from the district, and the court so ordered. (Adee, et al. are eighty-two individuals owning lands within the district who, at the beginning of the proceedings, requested exclusion of their lands. The request then made was denied.) The exclusion of the lands of all individuals and municipalities then represented by counsel who opposed the creation of the district, resulted in the last phase of the proceeding in the trial court being heard ex parte. The trial court found the originating petitions to be sufficient, and on August 16, 1957, entered a decree forming the district. The following day the directors of the district were appointed.
Third. On November 13, 1957, the attorney general, pursuant to C.R.S.1953, 149-6-7, initiated quo warranto proceedings *817 in this court, cause No. 18471, the purpose of which was to test the legality of the formation of the district and the right of its directors to hold office.
It is argued on behalf of the district that cause No. 18396 should be dismissed for the reason that the named plaintiffs in error are no longer in court; that all of their property was omitted from the district, as requested by them, and they were dismissed from the action; that there is no appearance anywhere in the record for anyone other than those individually and specifically named; that there was no appearance for a class in the trial court and a new party "the class" may not be introduced into the record on writ of error. We deem it unnecessary to do other than to say that these arguments directed to cause No. 18396 are well founded, and the writ of error in that action is dismissed.
With reference to cause No. 18398, it is argued that the writ of error should be dismissed for the reason that all plaintiffs in error were in default in the trial court; that none of them appeared in the trial court; that a final judgment was entered on April 25, 1957, and no motion for a new trial was filed and no order dispensing with the filing thereof was entered, and that the requirements of rules 59, 111 and 112, R.C.P.Colo., relating to writs of error were not complied with. There is merit in each of these contentions and the writ of error in cause No. 18398 is accordingly dismissed.
We now direct our attention to the action in quo warranto. Counsel for the district argue that the relator's petition in quo warranto fails to state a claim upon which relief may be granted. It is contended that the decree of the trial court creating the district can only be attacked upon the grounds of lack of jurisdiction, fraud, or invalidity appearing on the face of the decree, and that quo warranto does not serve as a writ of error in that alleged errors committed by the court during the trial will not be inquired into. The Water Conservancy Act, C.R.S.1953, 149-6-7, provides in pertinent part:
"If an order be entered establishing the district, such order shall be deemed final and no appeal or writ of error shall lie therefrom, and the entry of such order shall finally and conclusively establish the regular organization of the district against all persons except the state of Colorado, in an action in the nature of a writ of quo warranto, commenced by the attorney general within three months after said decree declaring such district organized as herein provided, and not otherwise. The organization of such district shall not be directly nor collaterally questioned in any suit, action of proceeding except as herein expressly authorized."
It is argued by counsel for the district that the opinions in People ex rel. Rogers v. Letford, 102 Colo. 284, 79 P.2d 274, and People ex rel. Dunbar v. San Luis Water Conservancy District, 128 Colo. 193, 261 P.2d 704, support the proposition that the findings and conclusions of the trial court cannot be reviewed in quo warranto proceedings. An examination of the records and briefs filed in these cases leads us to a contrary conclusion. In each of these cases the testimony before the trial court was considered. The opinion in the Letford case [102 Colo. 284, 79 P.2d 278] stated that, "This action is permissible under section 3, article 6 of the Constitution, is of the nature of a common-law proceeding searching the entire record, and is not limited by sections 321 to 330 of the Code of Civil Procedure." We hold that the "record" thus to be searched in matters of this kind includes the testimony, and all matters considered by the trial court.
Numerous grounds are urged by the attorney general in support of his position that the decree of the trial court should be nullified. The issues have been very ably presented by counsel on both sides, and the court has had the benefit of briefs supplied by friends of the court. The conclusion *818 which we reach with reference to two questions only, makes it unnecessary to consider other intricate and most interesting arguments.
Questions to be Determined.
First: Did the trial court commit error in granting the motion for the exclusion from the proposed district of lands within certain objecting municipalities and those of individuals opposing the formation of the district, which motion was made by attorneys for the proponents of the district?
This question is answered in the affirmative. The motion to which reference is made in the above question was made at the opening of the third phase of the hearings conducted by the trial court. The first phase involved questions bearing upon the sufficiency of protesting petitions, and resulted in a finding that the protests were insufficient to prevent formation of the district. The second phase of the hearings involved many questions concerning the truth of the allegations of the petitions and resulted in (1) a finding by the trial court that the allegations thereof were true, and (2) a dismissal of the objections which raised those issues. The third phase of the hearings conducted by the trial court involved consideration of questions testing the sufficiency of the originating petitions.
As hereinabove pointed out, the effect of granting the motion was to prevent opposition at the important hearing on questions bearing upon the sufficiency of the originating petitions. As stated by counsel for proponents in open court, protestants and objectors were removed from the case and "* * * that they then be requested to depart hence, having won their victory." Following the removal of opposition to the proceedings upon the third phase of the case, it took but one day to present the evidence in support of the sufficiency of the originating petitions and the decree establishing the district was entered forthwith.
We have hereinabove mentioned the fact that the district created by the decree was in a very substantial way different as to size and valuation than the district which the originating petitions proposed to create. The substantial reduction in size and valuation was brought about, as hereinabove described, without the consent of any of the approximately 4,500 originating petitioners (except some ten or twelve directors and officers of a water association sponsoring the district).
It is contended by counsel for the district that the statute under which the district was created authorized the exclusions brought about by the motion and the court's action thereon. The pertinent language of the act, C.R.S. 1953, 149-6-4, is as follows:
"No petition with the requisite signatures shall be declared void on account of alleged defects, but the court may permit the petition to be amended at any time to conform to the facts by correcting any errors in the description of the territory, or in any other particular. * * *" (Emphasis supplied.)
We think it sufficient to say that the motion of proponents' counsel was not for the purpose of correcting any "errors in the description of the territory" to be included in the district nor was the motion intended to correct any "errors" of the petition "in any other particular." It is also clear that the motion was not for an amendment "to conform to the facts."
A desire to foreclose opposition is not a correction of an "error in the description" nor a correction of an error "in any other particular" in the originating petitions. We are fully satisfied that under the provisions of this statute the legislature did not intend to authorize counsel for the proponents of a conservancy district, after petitions have been signed for the creation of a particular district, to exclude land therefrom so that the valuation of property to be included therein is reduced by more than twenty-five per cent, and the size of the district reduced by fifty square miles.
The result of the exclusions is that the signatures of all persons on originating petitions become a nullity. After the exclusions, the petitions no longer describe the "territory to be included in the proposed *819 district." (149-6-4) The signers of such petitions contemplated and intended a district very different from the one resulting from such exclusions. The ultimate tax burden upon those remaining in the district would be definitely affected and it cannot be assumed that any one of the petitioners would have affixed his signature to the originating petitions had he known that the district to be created would be substantially different from that made known to him by the instrument which he signed as an originating petitioner.
Similar problems have arisen in improvement districts where, after signing the petition, lands within the district were excluded. In Smith v. Improvement District No. 14, 1913, 108 Ark. 141, 156 S.W. 455, 456, 44 L.R.A.,N.S., 696 the court stated:
"* * * It will be seen our statutes require as a prerequisite to the exercise of authority conferred upon the city council that a petition be first filed designating the boundaries of the district, so that it may be easily distinguished. This is for the benefit of the property owners. A property owner might be willing to sign for an improvement district as designated in the first petition, and might be unwilling to sign if a part of the property included within the boundaries of the district should be omitted; for this might have the effect of imposing upon the property owners additional and enlarged burdens which they did not contemplate when they signed the petition. A special limited jurisdiction is conferred upon the city council to lay off the district as designated by the property owners in the first petition, and the council must conform strictly to the authority conferred upon it. For the same reason the chancery court had no power to change or alter the boundaries of the district, and it follows that in making up the valuation of the property of the district all the property situated in the district as it was created must be considered." (Emphasis supplied.)
The altered district was held to be a nullity.
Again, in Riddle v. Ballew, 1917, 130 Ark. 161, 197 S.W. 27, 28 the same court said under similar facts:
"* * * It would seem from the doctrine of these cases that, as the petition for the establishment of the district is jurisdictional, the city council has no authority to establish a district, the boundaries of which are not in conformity with the territory as described and set up in the petition. It is not within the power of the council to amend the petition of the property owners. This the property owners could do themselves, and conform their petition by way of description to such property as they might ascertain would meet with the approval of the council and insure the creation of the district in accordance with their wishes. But here this was not done, and the ordinance creating the district and all proceedings thereunder are therefore void.
* * * * * *
"It was for the property owners, and not the council, to determine what property they desired to have included within their improvement district, and the council could not determine that question for them without their consent as expressed in a petition in conformity with the statute. Neither had the chancery court any jurisdiction to determine that question for the property owners. * * *" (Emphasis supplied.)
The same issue was presented in City of Lewistown v. Warren, 52 Mont. 356, 157 P. 954, 955, where the court stated:
"* * * By reference the petition is made a part of the complaint. It discloses that this defendant did join in the petition for the creation of a special improvement district to include all of the property mentioned in the petition. In creating the district, however, the city excluded a very considerable portion of the property, and cannot now be heard to say that the defendant *820 should be estopped by her conduct. She may have been desirous that a district be created with a large area and a correspondingly low tax, and justly opposed to the creation of a district with a less area and a higher tax. 2 Page & Jones on Taxation by Assessment, § 1013." (Emphasis supplied.)
These cases are merely an application of the general rule that where the legislature prescribes a statutory procedure, it must be substantially adhered to, and any departure therefrom renders a resulting decree a nullity.
A water conservancy district is a quasi-municipal corporation. The formation of such districts is a legislative function. For this purpose, the statute has set up certain standards and requirements and has delegated to the district court the ministerial and judicial task of determining whether these standards have been met in a given case. The court does not have and could not constitutionally have been invested with a general discretion for the formation of whatever districts the court deemed to be in the public interest. 16 C.J.S. Constitutional Law § 139(d) (1) and (2), pp. 637-640 and note 86 under (d) (2). The court has jurisdiction only if the statutory requirements are met and it can act only in strict accordance with the powers delegated to it by the language of the statute. Cole v. City of Watertown, 34 S.D. 69, 147 N.W. 91. This is a statutory proceeding and the powers conferred may not be expanded by inference or construction beyond the language of the statute.
The statute controlling the formation of water conservancy districts embodies a procedure much like that involved in many states in incorporating villages and cities or annexing or detaching territory, or in establishing various kinds of special improvement districts, school districts, and other municipal or quasi-municipal corporations. The first step is the filing of a petition signed by a specified number of people. The obvious purpose of this is to establish that the project or district has sufficient popular support before the law will compel others to pay their share of the cost. To make this support meaningful, and to comply with the notice requirements of due process, the proposal in the petition must be specific; otherwise, a citizen cannot form an intelligent opinion as to whether to sign and has no way of knowing what he is petitioning for or what he is agreeing to pay and the effect of his signing upon others who also will be taxed.
In Colorado the petition must describe generally the territory involved with sufficient precision to enable a person to ascertain whether his land is included. Such a description, however, provides more than a notice to landowners; it furnishes a basis for estimating the quantities of water needed, the size of the tax base and population involved and the benefit which might be anticipated in terms of the cost per acre foot of water supplied. The Colorado statute also requires that the petition describe generally the "purpose of the contemplated improvement" (not the district).
Once these facts have been stated in the petition and people in the district have weighed the merits of the proposal and each has estimated the burden and benefit for himself, it would be grossly unfair to permit changes to be made, as has been done in this case, by eliminating property belonging to numerous individuals and municipalities, thus multiplying the cost per acre foot of water to the user. The signer's original petition is materially and substantially amended without his authority, subjecting him to additional burdens. We cannot give approval to such procedure.
Among numerous cases dealing with comparable fact situations in which similar amendments were held illegal, we find the following: Watkins v. Griffith, 59 Ark. 344, 27 S.W. 234; Minor v. Board of Control of City of Hamilton, 20 Ohio Cir.Ct.R. 4; Hutchinson v. City of Omaha, 52 Neb. 345, 72 N.W. 218; Whaples v. City of Waukegan, 179 Ill. 310, 53 N.E. 618; Marshall v. Williamson, Miss., 47 So.2d 814; and Chitty v. Parker, 172 N.C. 126, 90 S.E. 17.
*821 Second: Can the above described error of the trial court be cured by directing that it deny the motion to exclude the lands in question, and to re-draft the decree to include all such lands?
This question is answered in the negative. Counsel for the proponents argue that: "If the amendment is held to be improper by this court, such error does not make the decree creating the district void,it only makes the amendment improper and the court should merely direct the trial court to correct its decree by denying the amendment." There are many reasons why this argument is without validity. We mention the following:
First. To order the amendment denied would result in placing the lands in question in the district notwithstanding the fact that for over a year the owners of the land, and the municipalities within which some of the land is located, had actively opposed formation of the district. These owners and municipalities would suddenly become a part of the district without having had their full day in court, in violation of due process.
Second. If the lands in question are now ruled to be included in the district, this court would have created discrimination between individuals and municipalities within the district by so holding. There is no way that an order of this court entered at this time, decreeing that these municipalities and the lands of these individuals are part of the district, can provide for the collection of a retroactive tax on these individual lands and the lands within these municipalities for the tax year of 1957. Other persons in the district have already paid the tax. Consequently the tax burden between those in the district as created by the lower court, and those replaced in the district by this court, would not be equal, uniform or equivalent one to the other.
Third. Replacing these excluded lands within the district at this late a date would not correct the departure from statute by the lower court in making such exclusions in the first instance. It is fundamental law that in statutory proceedings the statute must be strictly followed. If it is not strictly followed then any decree resulting from the variance is void and a nullity. An order finding a particular part of the proceedings improper and erroneous does not erase the invalidity of the decree.
For the foregoing reasons the decree creating the district is a nullity; hence the rule to show cause is made absolute and the trial court is directed to vacate the decree and dismiss the action.
DOYLE, J., does not participate.

On Petition for Rehearing
Upon application made by the respondents, this court granted leave to file a petition for rehearing consisting of pages in excess of those authorized by the rule. The petition for rehearing filed by counsel for respondents consists of twenty pages, with an additional appendix of twenty pages of single space typewritten material. In view of the importance of the issues involved and the widespread interest in the determination thereof, we have decided to treat briefly each of the propositions contained in this document.
The subject matter to be presented in a petition for rehearing is governed by the Rules of Civil Procedure as adopted by the court. In part these rules provide that a petition for rehearing:
"* * * shall briefly state the points claimed to have been overlooked or misapprehended by the court with proper references to the particular portion of the record and briefs relied upon. * * * In no case will any argument be permitted in support of such petition. If argumentative matter is contained therein, the petition may be stricken. * * *" C.R.S. 1953, Vol. 1, R.C.P. Rule 118, as amended.
Much argument, and argumentative matter, has been included in the petition under consideration. In many instances no citation of authority, or reference to the record and briefs, has been given in support of a *822 claim of a point allegedly overlooked or misapprehended. To the contrary, pure argument has been made, based solely upon a disagreement with the court's opinion.
While under the rule the petition for rehearing could be stricken and denied, without other consideration, the arguments made therein will be discussed in this memorandum in some detail.

Point I.
Analysis of this portion of the petition reveals no reference to record or briefs in support of any point claimed to have been overlooked or misapprehended. It is instead a general discussion of history, legislatively declared public policy, and argument.
The assumption is made that the opinion of the court fails to give full force and effect to the Water Conservancy Act, without directing attention to any portion wherein the decision is derelict in this respect. Bold unsupported assertions that the decision will "destroy the general purpose of the Act" and "curtail the entire development of water resources in Colorado" without explanation as to how and why such is the case are mere argumentative disagreements with the opinion.
It is asserted that it is this court's comments "upon the measuring of the benefits of the tax base and the cost per acre foot" that jeopardize the future water development of the entire state, but no clue is given in this section of the petition as to how these comments create the claimed chaotic condition. On page 18, it is asserted that the opinion of this court has assumed that a project with complete detail as to location, cost and all other factors must be known and developed prior to the time a petition may be circulated and it is asserted, further, that examination of the decrees organizing other water conservancy districts throughout the state indicates that it is not possible for any of these districts to ascertain what this court assumes should be available in advance; namely, a "basis for estimating the quantities of water needed, the size of the tax base and population involved and the benefit which might be anticipated in terms of cost per acre foot of water supplied."
Respondents here grossly misconstrue our language both as to the meaning of words and context. We direct specific attention to the pertinent portion of the foregoing opinion, to-wit:
"The statute controlling the formation of water conservancy districts embodies a procedure much like that involved in many states in incorporating villages and cities or annexing or detaching territory, or in establishing various kinds of special improvement districts, school districts, and other municipal or quasi-municipal corporations. The first step is the filing of a petition signed by a specified number of people. The obvious purpose of this is to establish that the project or district has sufficient popular support before the law will compel others to pay their share of the cost. To make this support meaningful, and to comply with the notice requirements of due process, the proposal in the petition must be specific; otherwise, a citizen cannot form an intelligent opinion as to whether to sign and has no way of knowing what he is petitioning for or what he is agreeing to pay and the effect of his signing upon others who also will be taxed.
"In Colorado the petition must describe generally the territory involved with sufficient precision to enable a person to ascertain whether his land is included. Such a description, however, provides more than a notice to landowners; it furnishes a basis for estimating the quantities of water needed, the size of the tax base and population involved and the benefit which might be anticipated in terms of the cost per acre foot of water supplied. The Colorado statute also requires that the petition describe generally the `purpose of the contemplated improvement' (not the district).
"Once these facts have been stated in the petition and people in the district *823 have weighed the merits of the proposal and each has estimated the burden and benefit for himself, it would be grossly unfair to permit changes to be made, as has been done in this case, by eliminating property belonging to numerous individuals and municipalities, thus multiplying the cost per acre foot of water to the user. The signer's original petition is materially and substantially amended without his authority, subjecting him to additional burdens. We cannot give approval to such procedure."
Thus our opinion stated that the function of requiring the petition to describe territory to be included and the purpose of the contemplated improvement, (the court underlining the word "improvement") is that a citizen may know what he is petitioning for. He is furnished "a basis for estimating the quantities of water needed, the size of the tax base and population involved and the benefit which might be anticipated in terms of the cost per acre foot of water supplied." Furnishing a "basis for estimating" various matters is a far cry from stating that the district's project must be completely planned in every detail prior to the time the petition is filed. Section 149-6-13(9) gives the district board the authority "to adopt plans and specifications for the works for which the district was organized, which plans and specifications may at any time be changed or modified by the board."
Objectors' Exhibit 6, together with all the supporting appendices, is a highly specific plan with carefully estimated costs and quantities. A reading of the Letford case discloses that the court had before it the Colorado-Big Thompson project (Pet. Ex. DD here), and the San Luis District which was originally formed for a storage reservoir. We are not aware of any district that has been formed in this state, except on the basis of a specific proposal.
The only authority cited for the proposition that our opinion "emasculates" the Act is Section 149-6-1(7)(d), which declares the public policy of the State to be that of encouraging the organization of water conservancy districts, section 149-6-3, providing that district courts of this state have the jurisdiction to form such districts for conserving, developing and stabilizing water, and section 149-6-41 providing for liberal construction of the Act to effect its purposes.
It is patent that the legislature, as a matter of public policy, believed that the formation of a conservancy district under the standards set forth in the Act would further the public interest. Otherwise the legislation would never have been enacted. Following the declarations of policy in sec. 1 of the Act are the sections of the Act which are calculated to protect the interests of petitioners, protestants and objectors sec. 149-6-2 through 7. A provision as to liberal construction of an Act is not a grant of power to a trial court to exercise its authority by committing the manifest error of failing to protect rights accorded by the Act.
The obligation of liberal construction imposed by 149-6-41 runs to each section in the entire Act in order that all its purposes may be accomplished. In People ex rel. Dunbar v. San Luis Water Conservancy District, 128 Colo. 193, 261 P.2d 704, 710, this court said, inter alia:
"It is our duty to construe the Water Conservancy District Act so as to give force and effect to all of its provisions, * * *."
The legislature has not stated that district formation, per se, is desirable. In Hill v. District Court, 134 Colo. 369, 304 P.2d 888, 890, we said, concerning this district:
"It is equally clear that not every proposed water district is worthy of public sanction. It may well be that the proposed district here under consideration falls in this category."
Section 149-6-3 gives the district court authority to form such districts only, "* * when the conditions stated in section 149-6-4 are found to exist * * *." It was pointed out in the opinion that reference *824 to section 149-6-4 shows that petitions for district formation must set forth: "A general description * * * of the territory to be included in the proposed district," and that since the territory actually included in the district is substantially different from the "territory to be included" the "conditions stated in section 149-6-4" did not exist. In such a situation, the conditions which would give the lower court authority to form a district did not exist.

Point II.
The respondent does not point to any language that holds or implies that a Water Conservancy District is a special improvement district. In our opinion we specifically state: "A water conservancy district is a quasi-municipal corporation." The same thing was said in the Letford case. It may be that the language which respondents find objectionable is the following:
"The ultimate tax burden upon those remaining in the district would be definitely affected and it cannot be assumed that any one of the petitioners would have affixed his signature to the originating petitions had he known that the district to be created would be substantially different from that made known to him by the instrument which he signed as an originating petitioner."
Respondents argue that there can be no "unequal tax burden in any manner whatsoever." It is stated that under 149-6-16 and 149-6-17 the district tax is limited to ½ mill prior to water delivery and 1 mill after water delivery, and urged that excluding lands in no way increases the ultimate tax burden on the remaining lands because these statutory limits may not be exceeded. Taxes are levied under Class A for "paying expenses of organization, for surveys and plans, paying costs of construction, operating and maintaining the works of the district," provided that the rate "shall not exceed" those specified. It is perfectly obvious that if the district could get along with less than the full levy and carry on its program, then to carry on the same program with 25% of the tax base eliminated would require an increase in mill levy. And if the district tax were at the maximum mill levy, then a reduction of 25% of the taxable property reduces the amount of taxes available for its program, lengthens the time required for accomplishment thereof, and increases the ultimate tax burden of those left in the district. On either assumption, elimination of 25% of the tax base increases the burden on those remaining.
By way of correction of respondents' comments on page 7 of the petition for rehearing, it should be mentioned that as to a Class B water allotment to municipalities (149-6-18), as to Class C allotments to irrigation districts (149-6-19) and as to individual allotments under Class D (149-6-20), respondents' statements that rates may be imposed "only by contract," and "only at the consent of the contracting parties" are misleading. The allotee is already paying the general district tax. The allotee in the petition for allotment agrees to pay a specific price per acre-foot for water and must in the application agree to pay the tax rate above the general tax that is fixed each year by the district board. The board first accepts the petitionthen annually fixes the rate of tax after the allotee is bound to the purchase.
The assertion (p. 16) is made that recently released figures show that since the decree forming the district was entered there has been an increase in assessed valuation in the district so that it will have as much money to work with as before the exclusions of land. First is to be noted that there is no evidence of this asserted fact in the record. Next is noted that any informed petitioner or counter petitioner would take into consideration possible future changes in valuation and population in the district area in making up his mind as to the desirability or undesirability of forming a district. Next, had the exclusions not occurred, the tax base would be just that much larger at this time and the individual burden that much less.
*825 The comments contained in the petition for rehearing concerning public policy are a repetition of those appearing under Point I.

Point III.
Point III of the petition for rehearing is a request to the court to hold that quo warranto does not search the entire record. Relator in his reply brief, pages 12 and 26, pointed out that in the Letford case the court stated that it was searching the entire record; that in the San Luis case the court examined the record with respect to the feasibility of the project involved.
In People ex rel. Dunbar v. Proposed Tollgate Sanitation District, 128 Colo. 33, 261 P.2d 152, the attorney general brought an action in the nature of quo warranto to test the legality of the creation of a sanitation district. The review was sought under section 7 of chapter 253, p. 752, 1949 Colo. S.L. which provides:
"If an order be entered establishing the district, such order shall be deemed final and no appeal or writ of error shall lie therefrom, and the entry of such order shall finally and conclusively establish the regular organization of the said district against all persons except the State of Colorado, in an action in the nature of a writ of quo warranto, commenced by the attorney general within thirty days after said decree declaring such district organized as herein provided, and not otherwise. The organization of said district shall not be directly or collaterally questioned in any suit, action or proceeding except as herein expressly authorized."
It will be noted that this provision is identical with the parallel provision found in Section 149-6-9 of the Conservancy Act, except that the Conservancy Act provides for a "three months'" period, instead of thirty days. One of the infirmities claimed by the relator was that certain persons should not have been allowed to vote or serve as directors of the district, because they did not have the qualifications required by the statute. This court stated:
"The relator, having proceeded, as here, we find nothing in the Act which remotely indicates any limitation of the raising of the questions here presented or any other that might be indicated." [128 Colo. 33, 261 P.2d 153.] (Emphasis supplied)
The court then declared the decree forming the district void. No plausible reason has been advanced why quo warranto review under substantially identical statutes may search the entire record where a sanitation district is concerned and is limited to fraud, lack of jurisdiction or invalidity on the face of the decree where a conservancy district is concerned. Instead of having overlooked or misapprehended the situation, it is apparent that our opinion met the issue squarely with the full picture in mind.
People ex rel. Wilson v. Blake, 128 Colo. 111, 260 P.2d 592, 594, is cited for the proposition that review is so limited. That case involved proceedings for formation of a city. After the time for writ of error had expired, proceedings in the district court in quo warranto were brought for the purpose of cancelling the decree forming the city. This court refused to permit the proceedings on the ground that they amounted to a collateral attack:
"We perceive no reason why those who object to the incorporation of a town should not enter appearance in the proceeding in the county court and there present their protests. Hearing thereon in regular manner would make for orderly proceedings on direct issues and forestall round-about attacks in an effort to accomplish indirectly that which could much better be pursued by direct method."
In other words, proceedings by writ of error could have been taken; they were not taken and that settled the matter in the absence of fraud, lack of jurisdiction or invalidity on the face of the record, which are the only grounds upon which collateral attack is permitted. 49 C.J.S. Judgments § 416, p. 820, et seq. A direct attack is defined *826 in 49 C.J.S. Judgments § 408, pp. 806, 807, and 808, as follows:
"A direct attack on a judgment is an attempt to avoid or correct it in some manner provided by law, in a proceeding instituted for that very purpose, in the same action and in the same court. * * * Such is a motion or other proceeding to vacate, annul, cancel, or set aside the judgment * * * or any proceeding to review it in an appellate court, whether by appeal, error, or certiorari, action to review, bill of review, writ of review, or, in general, any statutory method for avoiding or correcting a judgment."
We conclude that where no provision is made for review by writ of error and quo warranto is the only procedure affording adequate relief, it will search the entire record and is not limited to issues involving fraud, lack of jurisdiction or invalidity on the face of the decree.

Points IV and V
Counsel for respondents complain that our opinion cites cases for the proposition that in "similar" situations such amendments have been held illegal, and that these cases are inapplicable for a variety of reasons, depending upon the particular case they seek to distinguish. They point out that in some cases the amendment of the petition was permitted by a school board, or by a city council, or a board of county commissioners rather than a court, and that the cases arise under statutory procedures different from the Conservancy Act. In making this complaint counsel miss entirely the broad basis upon which our opinion is grounded. The purpose of requiring specific material to be included (149-6-4) in the petitions which are circulated and signed, such as the territory to be included in the district and the purposes of the contemplated improvement, is to give persons an opportunity to inform themselves concerning probable benefits and burdens arising from district formation before signing petitions for or remonstrances against district formation. To permit amendments changing the basis upon which this judgment is exercised is to emasculate the notice and information sections of the Act.
Counsel for respondents argue that the Act (149-6-38) provides that the rules of civil procedure govern in matters of pleadings or practice where not otherwise specified "herein," that R.C.P. Rule 15 gives the right of amendment and that therefore the exclusionary amendment is justified. Sec. 149-6-38 relates to the confirmation of contract proceedings and other actions by districts after they have been legally organized. This section states with some particularity what petitions for these purposes shall contain and how notice shall be given in order that interested persons may appear. If the "herein" applies to the proceedings specified in that section it is enough to say that the proceedings to which the section relates can arise only after valid district formation and do not apply to practice during formative proceedings. If the rules are to govern "where not otherwise specified herein," it is enough to say that the legislature has otherwise specified with respect to the contents of the petition. It might also be noticed that this so-called exclusionary amendment could not be deemed one to conform to the evidence. Opposition is not evidence and it cannot be said to conform to that which it opposes.
What is stated in the petition concerning the provision of Sec. 149-6-4 permitting the petition to be amended at any time to conform to the facts by correcting errors in description of territories or in any other particular is simply argumentative disagreement with the court's decision as to what the Act means.
The public policy arguments were discussed under Point I above.

Point VI.
It is urged in the petition for rehearing that this proceeding be remanded to the lower court with directions to vacate the order of exclusions, with directions to county treasurers to abate 1957 and 1958 taxes for the district which they have collected and impounded and then to proceed to hearing *827 on the third phase of the proceeding; namely, whether or not sufficient signatures of proper classifications were present on originating petitions.
The function of the suggested tax abatement apparently is to create equality as between those who have paid the tax and those who were excluded and did not. Equality would not be created, however, because those persons who have paid the tax would have lost the value of the use of their money while it has been impounded.
Counsel for respondents have taken the position that quo warranto does not serve as a writ of error, yet, here they request remand and correction of an error, normal relief under writ of error.
The operation of this fundamental principle is not dependent on procedural forms, legal niceties, or differences between writs of error and quo warranto. When the legislature states that an objective shall be accomplished in a particular way, departure from that path leaves the proceedings for the accomplishment of the objective a nullity.
The court did not overlook or misapprehend the fact that quo warranto does not function to correct errors or to extricate those who improperly exercise a supposed public function from a dilemma of their own weaving. The court has pointed out specifically that vacating the order of exclusions would not correct the situation. The court said:
"Replacing these excluded lands within the district at this late a date would not correct the departure from statute by the lower court in making such exclusions in the first instance. It is fundamental law that in statutory proceedings the statute must be strictly followed. If it is not strictly followed then any decree resulting from the variance is void and a nullity. An order finding a particular part of the proceedings improper and erroneous does not erase the invalidity of the decree."

General Comment
This court's opinion did not allude to other changes which occurred during the proceedings for district organization. It appears from the testimony below that the district was to be formed to participate in a particular Bureau of Reclamation project, and that the petitions were circulated and signed on the basis that this was the objective of district formation. When it developed in the trial below that this project could not be accomplished, proponents for the district adduced testimony of different objectives which the district might accomplish, such as the lining of canals, installing underground water pipes and removing trees and shrubs along the South Platte. Another idea advanced was for a transmountain diversion from the Little Snake and Elk Rivers. This program fell into disrepute when the engineer for the proponents of the district who had suggested the idea admitted on cross-examination that any lands which could be irrigated by such a project were located outside of the boundaries of the district. Another idea which was put forth was that the district could study underground water supplies in eastern Colorado, pump the water to the surface and transport it to the district.
Apparently the proponents for the district wished to divorce themselves from the Bureau of Reclamation project, which was the basis upon which signatures were obtained because they filed a motion which was granted changing the name under which they wished to be formed from Blue River-South Platte Water Conservancy District to South Platte Water Conservancy District. It is here noted that Section 149-6-4(3)(f) requires the petition to pray for the organization of the District by the name proposed, not some other name.
Thus it appears that petitions were signed for the creation of a Blue River-South Platte Water Conservancy District of a given size and tax base with the announced objective of participating in a particular Bureau of Reclamation project. What the petitioners got was a district of a *828 different name, with different objectives, covering less territory, and having a smaller tax base. Nobody signed for a district such as this. These changes are a direct violation of the statutory requirements found in Section 149-6-4. As pointed out in the original opinion, changes of this scope and magnitude emasculate the notice and information requirements of the Act.
The petition for rehearing is denied.
DAY, J., not participating.