535 P.2d 1333

**RANCHO DEL RIO GRANDE CONSERVANCY DISTRICT, Petitioner-Appellee,**

v.

**TRES RIOS ASSOCIATION, Protestant-Appellant.**

No. 9932.

Supreme Court of New Mexico.

May 14, 1975.

Rodey, Dickason, Sloan, Akin & Robb, William C. Schaab, Gene C. Walton, Albuquerque, for protestant-appellant.

Brandenburg & Brandenburg, James M. Brandenburg, Taos, for petitioner-appellee.

## OPINION

OMAN, Justice.

This is an appeal from a judgment creating a conservancy district for the purposes of irrigating and otherwise benefiting and developing agricultural lands. It was proposed that the district would cooperate with the United States under the Reclamation Law and enter into a reclamation contract or contracts for the construction of irrigation works as authorized by the Conservancy District-Reclamation Contract Act, which appears as §§ 75–32–1 to 75–32–24, N.M.S.A.1953 (Repl.Vol. 11, pt. 2, 1968). We reverse and direct that the petition for the formation of the district be dismissed.

The petition was filed pursuant to the Conservancy Act of New Mexico, which, including amendments thereto, appears as articles 28 to 31, inclusive, of chapter 75, N.M.S.A.1953 (Repl.Vol. 11, pt. 2, 1968, and Supp.1973). The only issue we need consider and decide is whether the district court, acting as a Conservancy Court under the Conservancy Act, had the authority to permit amendment of the petition and create the district in accordance with this amended petition.

The lands to be included within the district as described in the petition, which was signed by hundreds of petitioners, were identifiable and totalled 15,456 acres. In accordance with the classifications required by § 75–32–6, supra, these lands were divided into two classes, to wit:

(1) Class A, or irrigated lands, which totalled 5,073 acres, and

(2) Class B, or non-irrigated lands, which totalled 10,383 acres.

Class A property is assessed and levied against annually at a uniform rate per acre. Class B property is assessed and levied against annually on an ad valorem basis. Section 75–32–6, supra. These annual assessments are apportioned between Class A and Class B property, and the funds collected pursuant thereto are used by the district for the purposes set forth in the Conservancy Act of New Mexico, supra, and in the Conservancy District-Reclamation Act, supra.

There was included within the lands described in the petition a tract known as the La Serna Grant. These La Serna lands consisted of 2,600 acres of which 744 acres were shown as Class A property and the remaining 1,856 acres as Class B property. After conducting a hearing at which petitioners and protestants, who also numbered in the hundreds, presented evidence in support of their respective positions, the Conservancy Court concluded that the allegations of the petition were not true. The particular findings and conclusions of the Conservancy Court with which we are now concerned were:

(1) That the La Serna lands would not benefit from the formation of the district and must be excluded.

(2) That without the La Serna lands the formation of the district would not be feasible, since the costs would exceed the benefits.

(3) That the petition would have to be dismissed, because the statutory justification therefor was absent.

However, the court denied the motion of protestants to dismiss and granted petitioners the right to amend if the United States Bureau of Reclamation could, within a reasonable time, alter its plan for the district

by substituting other lands within the proposed district for the 744 acres of La Serna lands which were to be irrigated under the plan. The amended plan, which was offered by the Bureau of Reclamation and the petitioners and which the court accepted as the basis for its judgment creating the district, eliminated the entire 2,600 acres of La Serna lands from the district and reclassified as Class A property 744 acres which had been shown as Class B property in the original plan. Thus, under this amended plan, the total acreage of Class A property remained the same as in the original plan (5,073 acres), but the Class B property was reduced from 10,383 to 7,783 acres, and the total acreage in the proposed district was reduced from 15,456 to 12,856 acres. This amounted to a reduction in Class B property of slightly more than 25%, and a reduction in the total acreage in the proposed district of slightly less than 17%.

The question presented is whether the Conservancy Court was obliged to dismiss the petition upon the removal of the 2,600 acres of La Serna lands from the proposed district. We are of the opinion that it was so obliged. In the case of In re Arch Hurley Conservancy Dist., 52 N.M. 34, 191 P.2d 338 (1948), the issue presented on appeal was whether the Conservancy Court correctly included in a Conservancy District a portion of the right-of-way of the Chicago, Rock Island and Pacific Railway Company. This right-of-way was included within the plan proposed by the petition, and the objections of the railway to its inclusion in the proposed district were overruled and dismissed. The Conservancy Court concluded as a matter of law: "That under the law there is no authority for the Court to exclude any land from the District but the Petition must be approved or rejected."

This was but one of the conclusions of law upon which the Conservancy Court predicated its dismissal of the railway's objections and the entry of the judgment creating the district, and this particular conclusion was not singled out for special comment or approval in our opinion. However, this and all other conclusions of law quoted in the opinion were considered and necessarily approved when we stated: "Finding no error, the judgment of the trial court will be affirmed."

As to what must be alleged and proven by petitioners, we held:

"As a matter of fact, the petitioners *must allege* and the conservancy court *must find* that the property described in the petition will be benefited by the organization of the conservancy district—not *some* of the property described in the petition, as appellant would construe the statute—but all of it. * * *" 52 N. M. 42, 191 P.2d 343.

In the present case, the Conservancy Court, upon finding the La Serna lands would not be benefited, correctly concluded that they must be excluded and the petition dismissed. When it permitted the amendment of the petition and the creation of a new and different district, it exceeded its authority. The Colorado Supreme Court in the case of People v. South Platte Water Conservancy District, 139 Colo. 503, 343 P.2d 812 (1959), was faced with a like problem under a statutory procedure which was almost identical with New Mexico's. The Conservancy Court in the South Platte case, as did the Conservancy Court in the present case, permitted an amendment to the petition whereby a substantial portion of the property described in the petition was excluded. The language of the Colorado court pertinent to the resolution of the problem before us was:

"The result of the exclusions is that the signatures of all persons on originating petitions become a nullity. After the exclusions, the petitions no longer describe the 'territory to be included in the proposed district.' * * * The signers of such petitions contemplated and intended a district very different from the one resulting from such exclusions. The ultimate tax burden upon those remain-

ing in the district would be definitely affected and it cannot be assumed that any one of the petitioners would have affixed his signature to the originating petitions had he known that the district to be created would be substantially different from that made known to him by the instrument which he signed as an originating petitioner." Id. at 513–14, 343 P. 2d at 818–19.

"A water conservancy district is a quasi-municipal corporation. The formation of such districts is a legislative function. For this purpose, the statute has set up certain standards and requirements and has delegated to the district court the ministerial and judicial task of determining whether these standards have been met in a given case. The court does not have and could not constitutionally have been invested with a general discretion for the formation of whatever districts the court deemed to be in the public interest. 16 C.J.S. Constitutional Law § 139d(1) and (2), pp. 637–640 and note 86 under d(2). The court has jurisdiction only if the statutory requirements are met and it can act only in strict accordance with the powers delegated to it by the language of the statute. Cole v. City of Watertown, 34 S.D. 69, 147 N.W. 91. This is a statutory proceeding and the powers conferred may not be expanded by inference or construction beyond the language of the statute.

"The statute controlling the formation of water conservancy districts embodies a procedure much like that involved in many states in incorporating villages and cities or annexing or detaching territory, or in establishing various kinds of special improvement districts, school districts, and other municipal or quasi-municipal corporations. The first step is the filing of a petition signed by a specified number of people. The obvious purpose of this is to establish that the project or district has sufficient popular support before the law will compel others to pay their share of the cost. To make this support meaningful, and to comply with the notice requirements of due process, the proposal in the petition must be specific; otherwise, a citizen cannot form an intelligent opinion as to whether to sign and has no way of knowing what he is petitioning for or what he is agreeing to pay and the effect of his signing upon others who also will be taxed.

"In Colorado the petition must describe generally the territory involved with sufficient precision to enable a person to ascertain whether his land is included. Such a description, however, provides more than a notice to landowners; it furnishes a basis for estimating the quantities of water needed, the size of the tax base and population involved and the benefit which might be anticipated in terms of the cost per acre foot of water supplied. The Colorado statute also requires that the petition describe generally the 'purpose of the contemplated *improvement*' (not the district).

"Once these facts have been stated in the petition and people in the district have weighed the merits of the proposal and each has estimated the burden and benefit for himself, it would be grossly unfair to permit changes to be made, as has been done in this case, by eliminating property belonging to numerous individuals and municipalities, thus multiplying the cost per acre foot of water to the user. The signer's original petition is materially and substantially amended without his authority, subjecting him to additional burdens. We cannot give approval to such procedure." Id. at 516–17, 343 P.2d at 820.

We agree with the conclusions reached by the Colorado court. Although not concerned with the formation of conservancy districts, the following cases support the principle that in the formation of districts for special purposes which will result in the imposition of taxes or other assessments upon the property included therein,

a substantial change in the property to be included from that described in the petition or petitions for the creation of such districts vitiates the petition or petitions and requires their dismissal. Smith v. Improvement Dist. No. 14, 108 Ark. 141, 156 S.W. 455 (1913); Marshall v. Williamson, 47 So.2d 814 (Miss.1950); City of Lewistown v. Warren, 52 Mont. 356, 157 P. 954 (1916); Chitty v. Parker, 172 N.C. 126, 90 S.E. 17 (1916).

The judgment should be reversed and the Conservancy Court directed to dismiss the petition.

It is so ordered.

STEPHENSON and MONTOYA, JJ., concur.